Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/17/2018 09:08 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
DERRICK U. STRICKLIN, APPELLANT.
___ N.W.2d ___

Filed August 17, 2018.    No. S-17-914.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

3. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

4. ____: ____: ____. A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

5. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

6. ____: ____. In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.

7. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented by the same lawyer both at trial and on direct appeal, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.

8. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

9. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. ____: ____. To show that counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

11. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

12. **Judges: Recusal.** To demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

13. **Judges: Recusal: Presumptions.** A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

14. **Effectiveness of Counsel.** Defense counsel is not ineffective for failing to raise an argument that has no merit.

15. **Trial: Attorneys at Law: Presumptions.** Trial counsel is afforded due deference to formulate trial strategy and tactics, and there is a strong presumption that counsel acted reasonably.

16. **Trial: Prosecuting Attorneys.** Prosecutors generally may not give their personal opinions on the veracity of a witness or the guilt or innocence

of the accused. The principle behind this rule is that the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence.

17. **Postconviction: Effectiveness of Counsel: Proof.** A petitioner's postconviction claims that his or her defense counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence the investigation would have procured and how it would have affected the outcome of the case.

18. **Attorneys at Law: Effectiveness of Counsel.** A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

19. **Trial: Effectiveness of Counsel: Evidence.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.

20. **Trial: Attorney and Client: Effectiveness of Counsel: Testimony: Waiver.** Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.

21. **Postconviction: Evidence: Presumptions: Proof.** The threshold showing that must be made to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high, because after a fair trial and conviction, the presumption of innocence vanishes.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed in part, and in part reversed and remanded with directions.

Stuart J. Dornan and Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Hall, District Judge.

STACY, J.

A jury found Derrick U. Stricklin guilty of two counts of first degree murder, three counts of use of a deadly weapon to commit a felony, attempted intentional manslaughter, and possession of a deadly weapon by a prohibited person. He was sentenced to life imprisonment for the murders and to additional terms of years for the other offenses, the sentences to run consecutively. We affirmed his convictions and sentences on direct appeal.[1]

Stricklin now moves for postconviction relief, raising claims of ineffective assistance of counsel and a claim of actual innocence. The district court denied relief without conducting an evidentiary hearing. Stricklin filed this timely appeal. We affirm in part, and in part reverse and remand for an evidentiary hearing.

## I. FACTS

Stricklin's trial was consolidated with codefendant Terrell E. Newman. The underlying facts are set forth in our opinion in Stricklin's direct appeal.[2] Summarized, Stricklin's convictions arose from the shooting deaths of Carlos Morales and Bernardo Noriega during a drug transaction at an automobile body shop owned by Morales. Jose Herrera-Gutierrez was also present during the drug transaction and the shootings, and he was the State's primary witness at trial. Herrera-Gutierrez identified Stricklin and Newman as the shooters and testified that he recognized both men from prior visits to Morales' shop. He had seen Stricklin approximately four times at the shop, and he had seen Newman approximately three times at the shop.

The State's theory of the case was that Stricklin and Newman committed the crimes together. Newman's cell phone records showed that Newman was in communication with both Morales and Stricklin on the day of the shootings, and also

---

[1] State v. Stricklin, 290 Neb. 542, 861 N.W.2d 367 (2015).

[2] Id.

showed that Newman's cell phone was in the area of the murder scene during the relevant timeframe.[3]

A jury found Stricklin guilty of two counts of first degree murder, three counts of use of a deadly weapon to commit a felony, attempted intentional manslaughter, and possession of a deadly weapon by a prohibited person. He was sentenced to consecutive sentences of life imprisonment for each murder conviction, 15 to 25 years' imprisonment for each use of a deadly weapon conviction, 20 months' to 5 years' imprisonment for the attempted manslaughter conviction, and 15 to 25 years' imprisonment for the possession of a deadly weapon conviction.[4] The district court denied his motion for new trial, and he filed a direct appeal.

Stricklin was represented by the same counsel at trial and on direct appeal. In his direct appeal, Stricklin assigned the trial court erred in (1) denying his motion to sever, (2) excluding statements of a confidential informant, (3) limiting his cross-examination of Herrera-Gutierrez, (4) failing to include relevant language in certain jury instructions, (5) overruling his motion for new trial based on juror misconduct, and (6) overruling his motion to reopen the evidence. This court affirmed his convictions and sentences.[5]

Stricklin then filed the instant motion for postconviction relief, along with a motion for appointment of counsel. His postconviction motion alleges counsel was ineffective for (1) not moving to recuse the trial judge; (2) failing to object to jury instructions Nos. 6, 11, 12, and 20; (3) failing to file notice of his alibi defense and present certain alibi evidence; (4) failing to object and move for a mistrial during closing arguments; (5) failing to raise a confrontation objection at a hearing on his motion for new trial; (6) abandoning, during the hearing on the motion for new trial, all arguments except juror misconduct; (7) failing to call a witness at the hearing

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

on the motion for new trial; (8) failing to obtain a crime scene investigator; (9) failing to object to cell phone record evidence on "authentication" grounds; (10) failing to depose and call certain identified witnesses and investigate certain defenses; (11) failing to file a motion in limine regarding the admissibility of testimony of a confidential informant; (12) unreasonably advising him to waive his right to testify; (13) failing to assign as error on direct appeal the insufficiency of the evidence to support his convictions and the improper identification of Stricklin as one of the perpetrators; and (14) failing to obtain a complete record for appeal. Finally, Stricklin alleges a claim of actual innocence. The district court denied the postconviction motion without conducting an evidentiary hearing. Stricklin filed this appeal.

## II. ASSIGNMENTS OF ERROR

Stricklin assigns, restated, that the district court erred in (1) denying him an opportunity to amend his motion for postconviction relief, (2) denying him an evidentiary hearing on his motion for postconviction relief, (3) finding he did not meet the threshold for actual innocence, and (4) denying his motion for postconviction relief.

## III. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[6]

## IV. ANALYSIS

### 1. General Propositions
### Governing Postconviction

[2,3] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground

---

[6] *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017); *State v. Watson*, 295 Neb. 802, 891 N.W.2d 322 (2017).

that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.[7] In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[8]

[4-6] A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.[9] If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.[10] Thus, in a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.[11]

[7] Here, Stricklin was represented by the same counsel at trial and on appeal, and his postconviction motion alleges counsel provided ineffective assistance both at trial and on direct appeal. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented by the same lawyer both at trial and on direct appeal, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.[12]

---

[7] *Vela, supra* note 6.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

[12] *State v. McKinney*, 279 Neb. 297, 777 N.W.2d 555 (2010).

Recognizing this, the district court addressed all of Stricklin's ineffective assistance of counsel claims.

[8-11] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.[13] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[14] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[15] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[16] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[17] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[18]

## 2. Motion to Amend
### Postconviction Motion

Stricklin assigns error to the district court's "denying [him] an opportunity to amend his motion for postconviction relief." We review the district court's decision in this regard for an abuse of discretion.[19]

---

[13] *Thorpe, supra* note 11; *State v. Baker*, 286 Neb. 524, 837 N.W.2d 91 (2013).

[14] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[15] See *Vela, supra* note 6.

[16] See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018).

[17] See *Vela, supra* note 6.

[18] *Id.*

[19] *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

Approximately 4 months after filing his verified motion for postconviction relief, Stricklin filed a motion seeking "permission to Amend the Motion for Postconviction after the Court grants appointment of Counsel." Newman filed a similar motion in his postconviction proceeding. At a joint telephonic hearing on the motions, the court asked for clarification:

THE COURT: Okay. There was a motion filed by both . . . Newman and . . . Stricklin on August 17, 2016, which was a Request for Counsel and a Request to Amend the Postconviction Motion. I need to ask, and I'll start with you, Mr. Newman, are you asking to amend at this time?

MR. NEWMAN: Yes.

THE COURT: What are you asking to amend?

MR. NEWMAN: The motion for postconviction.

THE COURT: How are you asking for that to be amended?

MR. NEWMAN: By way of counsel.

THE COURT: Okay. So — what I want to make clear is, there was a motion asking for counsel, and then if counsel is appointed you want to keep open your ability to amend your Motion for Postconviction. Am I understanding that correctly?

MR. NEWMAN: Yes. Correct.

THE COURT: Okay. But you're not asking to amend here today?

MR. NEWMAN: No.

THE COURT: All right. And I'll ask you the same questions, Mr. Stricklin. Are you asking to amend your postconviction today?

MR. STRICKLIN: No.

THE COURT: Okay. Again, I'll just make it clear with Mr. Stricklin. So you're asking if the Court determines that an evidentiary hearing is warranted, then you're asking for Counsel to be appointed and then the ability to amend at that time; is that correct?

MR. STRICKLIN: Correct.

THE COURT: All right. So that matter will remain pending until the Court reviews — because I still have to review whether or not the evidentiary hearing will be granted, and then we can go from there.

MR. STRICKLIN: Okay.

The record affirmatively shows Stricklin was not seeking leave to immediately amend his postconviction motion in order to add factual allegations or include additional claims.[20] Instead, he intended the motion to serve as a placeholder of sorts for a possible future motion to amend by appointed counsel. Given the conditional nature of Stricklin's request, we find no abuse of discretion in denying the motion.

### 3. Failure to Seek Recusal
#### of Trial Judge

Stricklin's postconviction motion alleges his trial counsel was ineffective for not moving to recuse the trial judge and for abandoning an opportunity to have an evidentiary hearing on such a motion. Stricklin alleges that during his trial, "individuals and spectators in the audience" noticed "favoritism" and "deference favoring the state prosecution to the point of no return." Stricklin's postconviction motion alleges these concerns were brought to the attention of his counsel, and he claims counsel was ineffective for failing to pursue recusal based on these concerns. His motion does not explain what gave rise to these concerns nor does he allege any supporting facts.

[12,13] To demonstrate prejudice from counsel's failure to seek recusal, Stricklin must allege facts sufficient to demonstrate there was a reasonable probability such a motion would have been successful.[21] To demonstrate that a trial judge

---

[20] Cf. *State v. Mata*, 280 Neb. 849, 790 N.W.2d 716 (2010) (defendant requested leave to amend even if counsel was not appointed), *disapproved, Robertson, supra* note 19.

[21] See, e.g., *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018) (unless motion to suppress would have been successful, it cannot be said counsel was deficient in failing to file such motion).

should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[22] A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.[23]

Here, Stricklin's conclusory allegations of "favoritism" and "deference favoring the state" were insufficient to overcome the presumption of judicial impartiality and, without more, would not have required recusal. Moreover, the record affirmatively shows that when instructing the jury, the court specifically admonished it regarding such issues, explaining:

> I am not permitted to comment on the evidence, and I have not intentionally done so. If it appears to you that I have commented on the evidence, during either the trial or the giving of these instructions, you must disregard such comment entirely.
>
> You must not interpret any of my statements, actions, or rulings, nor any of the inflections of my voice as reflecting an opinion as to how this case should be decided.

[14] Because defense counsel is not ineffective for failing to raise an argument that has no merit,[24] we find no error in the postconviction court's denial of this claim without an evidentiary hearing.

### 4. Jury Instructions

Stricklin argues his counsel was ineffective for failing to object to jury instructions Nos. 6, 11, 12, and 20. The district court denied Stricklin's motion as to instructions Nos. 5, 11, and 12, because it found errors related to those instructions had been addressed and rejected on direct appeal. The court

---

[22] *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).

[23] *Id.*

[24] *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010).

denied Stricklin's motion as to instruction No. 20, because it found Stricklin failed to allege either what objection trial counsel should have made or what proposed alternative instruction should have been requested.

In his brief on appeal, Stricklin concedes that instruction No. 5 was addressed in his direct appeal and he presents no further argument regarding that instruction or his assigned error for instruction No. 6. Stricklin also concedes instructions Nos. 11 and 12 were addressed in codefendant Newman's direct appeal, but Stricklin contends he is not procedurally barred from raising those claims on postconviction, because he had the same counsel at trial and on direct appeal.[25] While it is true the claims of ineffective assistance premised on instructions Nos. 11 and 12 are not procedurally barred, Stricklin presents the same arguments regarding those instructions that Newman raised on direct appeal. And, in *State v. Newman*,[26] our opinion resolving Newman's direct appeal, we found such claims were meritless:

Instruction No. 11 provided the jury with definitions. Newman contends that the instruction was erroneous for omitting the phrase "'or intentional manslaughter,'" as stated in the pattern jury instruction. He does not identify the erroneous definition or the relevant pattern jury instruction, but we presume that he refers to the definition of "'[a] felony.'" Notwithstanding any error in that definition, the jury correctly understood that the offense of attempted intentional manslaughter constituted a felony. The jury found Newman guilty of attempted intentional manslaughter and the corresponding charge of use of a deadly weapon to commit a felony.

As to instruction No. 12, Newman contends that the instruction failed to correctly charge the jury on intent. However, instruction No. 12 was modeled on the relevant

---

[25] See *McKinney, supra* note 12.

[26] *State v. Newman*, 290 Neb. 572, 585, 861 N.W.2d 123, 135 (2015).

pattern jury instruction. As such, the instruction was not erroneous.

None of Newman's allegations of error in the instructions given to the jury caused him prejudice. Thus, the record affirmatively establishes that this claim of ineffective assistance of counsel is without merit.

Our reasoning in *Newman* shows that if Stricklin's counsel had challenged jury instructions Nos. 11 and 12, that challenge would likewise have been meritless. Because Stricklin's counsel cannot be ineffective for failing to raise an argument that has no merit,[27] the district court correctly denied postconviction relief on the claim involving instructions Nos. 11 and 12.

With respect to instruction No. 20, Stricklin alleges his counsel should have asked the court for a limiting instruction informing the jury that the records of Newman's cell phone use could not be considered in Stricklin's case. But in Stricklin's direct appeal, we specifically held Newman's cell phone records were admissible evidence against both Stricklin and Newman.[28] And we rejected the suggestion that a limiting instruction was necessary regarding an exhibit showing calls to Newman's cell phone and the location of the cell tower used to service those calls.[29] Because it would not have been error to deny such a limiting instruction if counsel had requested it, Stricklin's allegations of ineffective assistance as to instruction No. 20 were also insufficient to warrant an evidentiary hearing. We find no error in the postconviction court's denial of this claim without an evidentiary hearing.

## 5. Alibi Defense

Stricklin alleges his counsel was ineffective for failing to file notice of and present an alibi defense. In his postconviction

---

[27] See *Vo, supra* note 24.

[28] *Stricklin, supra* note 1, 290 Neb. at 552, 861 N.W.2d at 381 ("the evidence of Newman's cell phone records and exhibit 288 would have been relevant, admissible in a separate trial against Stricklin").

[29] *Id.*

motion, Stricklin alleges that at 10 a.m. on the day of the crimes, he took his stepson to a barber shop in downtown Omaha, Nebraska. He further alleges they left the barber shop around noon and drove to Stricklin's grandmother's house "located on 36th and Himebaugh." He alleges he took the "North freeway" en route to his grandmother's house and that during the drive, he made a call on his cell phone at 12:34 p.m. The postconviction motion does not allege how long Stricklin stayed at his grandmother's house, but it does allege that four named witnesses would corroborate this alibi. The motion further alleges Stricklin's cell phone records would corroborate this alibi.

The district court found these allegations were insufficient to warrant an evidentiary hearing, because they did not "definitively state [Stricklin] was not at the murder scene and merely suggest [Stricklin] may have been at these other places at some point in the day." Stricklin's brief concedes his motion did not affirmatively allege he was not at the crime scene, but he contends it was sufficient to describe that he was somewhere else at the time the State claims the shootings occurred and to allege that numerous alibi witnesses would corroborate that claim.

[15] At trial, the State relied on cell phone evidence linking Stricklin and Newman to the crime scene between 11:42 a.m. and 12:36 p.m. Thus, based on the State's theory of the case, the crimes occurred during the general time period Stricklin has alleged alibi witnesses would confirm he was someplace else. Stricklin alleges his counsel knew of this alibi information and was deficient in failing to present it. Stricklin's brief acknowledges that trial counsel is afforded due deference to formulate trial strategy and tactics and that there is a strong presumption that counsel acted reasonably.[30] But he argues that the reasonableness of trial counsel's strategy in rejecting his alibi defense cannot be determined without an evidentiary hearing. We agree.

---

[30] See *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

We find Stricklin has alleged facts which, if proved, are sufficient to show both deficient performance and prejudice regarding his alibi defense. Stricklin is entitled to an evidentiary hearing on whether trial counsel was ineffective for failing to file notice of and present evidence of his alibi defense.

## 6. CLOSING ARGUMENTS/MISTRIAL

Stricklin alleges his trial counsel was ineffective for failing to move for mistrial based on prosecutorial misconduct. His motion alleges two instances of alleged misconduct, but he argues only one of them on appeal, so we limit our analysis to that instance.[31]

During closing arguments, Stricklin's counsel referred to cell phone records showing Stricklin's cell phone neither made nor received any calls between 11:13 a.m. and 12:34 p.m. During his closing argument, defense counsel suggested the lack of calls during that timeframe was because Stricklin was driving. In the prosecutor's rebuttal, she responded to that argument, stating:

> At 11:13 . . . Stricklin has no more calls. From 11:13 until 12:34, he has no more calls. And the call that he wants you to believe he's traveling while it's being made, that call wasn't answered at 12:34. Why are there no more calls? The two of them are together. And in my mind . . . Stricklin turned his phone off. He had no incoming or outgoing calls at all between 11:13 and 12:34.

In response to this statement, Stricklin's attorney objected, stating, "That's not in evidence." The prosecutor countered that the cell phone records were in evidence, and the trial court overruled the objection.

In Stricklin's direct appeal, he alleged the prosecutor's comments amounted to prosecutorial misconduct. We found Stricklin had not preserved the issue for appellate review

---

[31] See *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018) (errors must be both specifically assigned and specifically argued to be considered by appellate court).

because his counsel had not requested a mistrial based on the prosecutor's comments.[32] Now, in his postconviction motion, Stricklin alleges his trial counsel was ineffective for failing to move for a mistrial and thus preserve for appellate review the issue of prosecutorial misconduct.

The district court denied postconviction relief on this claim without an evidentiary hearing, finding the prosecutor's comments did not mislead or unduly influence the jury and further finding that any resulting prejudice was not substantial enough to damage the integrity, reputation, or fairness of the judicial process. We agree.

[16] Prosecutors generally may not give their personal opinions on the veracity of a witness or the guilt or innocence of the accused.[33] The principle behind this rule is that the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own view of the evidence.[34] We have emphasized the importance of this rule and have admonished prosecutors to avoid using phrases such as "'I believe'" or "'the State believes'"[35] when arguing their case to the jury.

But here, to the extent Stricklin suggests the prosecutor's remark "in my mind" was an attempt to express a personal opinion, it was not one relating to the veracity of a witness or to Stricklin's guilt or innocence. Rather, the prosecutor was responding to an argument advanced by defense counsel on the possible interpretation of cell phone evidence. While prosecutors would be wise to avoid language expressing their personal opinion on any matter, the statement at issue here was not

---

[32] *Stricklin, supra* note 1.

[33] *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018). See, also, Neb. Ct. R. of Prof. Cond. § 3-503.4 ("[a] lawyer shall not . . . in trial . . . state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused").

[34] *Hernandez, supra* note 33.

[35] *Id*. at 928, 911 N.W.2d at 549.

misconduct. Thus, Stricklin's trial counsel was not deficient for failing to move for a mistrial based on the remark. The district court correctly denied postconviction relief on this claim without an evidentiary hearing.

## 7. Same Claims as Newman

Stricklin raises several claims of ineffective assistance of counsel that are identical, or nearly identical, to claims raised by Newman in his motion for postconviction relief. These claims relate to: trial counsel's failure to object during the motion for new trial, trial counsel's failure to obtain a crime scene investigator, and trial counsel's failure to challenge the authentication of Newman's cell phone records. These assignments of error are analyzed, and rejected, in *State v. Newman*,[36] our opinion resolving Newman's appeal of his postconviction motion. We briefly address them here as well.

### (a) Failure to Object During Motion for New Trial

Stricklin, like codefendant Newman, alleges his trial counsel should have objected when an attorney appointed to represent a juror accused of misconduct made a substantive representation about the juror's knowledge at a particular point in time, instead of eliciting such information from his client. Stricklin alleges that due to his counsel's deficient performance in not objecting to the remark, the juror's attorney was permitted to testify on behalf of his client and Stricklin was deprived of the opportunity to confront and cross-examine the juror. As we concluded in Newman's case, the files and records affirmatively refute this claim.

The record shows Stricklin and Newman both filed motions for new trial on the basis of juror misconduct, and the motions were heard together. Although Stricklin's counsel did not object to the substantive remark make by the juror's attorney, Newman's trial counsel did object, and argued the juror's

---

[36] *State v. Newman, ante* p. 770, ___ N.W.2d ___ (2018).

attorney should not be permitted to testify for his client. The court agreed and subsequently allowed both Stricklin and Newman to call the juror as a witness and ask questions about the timing and substance of the telephone conversation the juror had with his brother.

Thus, although Stricklin's counsel did not join in the objection raised by Newman's counsel, Stricklin can show no prejudice resulting from this failure. The files and records affirmatively refute his claim that he was denied an opportunity to question the juror directly, and the postconviction court did not err in denying an evidentiary hearing on this issue.

### (b) Crime Scene Investigator

Stricklin alleges his trial counsel was ineffective in failing to hire a crime scene investigator to rebut Herrera-Gutierrez' testimony. Stricklin's allegations are nearly identical to those made by Newman in his motion for postconviction relief. And Stricklin's allegations fail for the same reasons articulated in our opinion analyzing Newman's claims.

Stricklin alleges his trial counsel was "content to cross-examine" the State's witnesses and was deficient for not hiring a crime scene investigator or specialist to refute the evidence regarding footprints and blood splatter, and to do additional DNA testing. But Stricklin's postconviction motion presents no allegations regarding what such an investigator or specialist would have testified to if called or how such testimony would have rebutted the State's evidence or affected the outcome of the case.

[17] A petitioner's postconviction claims that his or her defense counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence the investigation would have procured and how it would have affected the outcome of the case.[37] The district court correctly concluded that Stricklin's conclusory allegations about the failure to

---

[37] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

hire a crime scene investigator did not warrant an evidentiary hearing.[38]

### (c) Cell Phone Records

Stricklin alleges his counsel was ineffective for failing to object to the authenticity of the cell phone records received into evidence at trial. Stricklin alleges that if his attorney had objected to the cell phone evidence on the ground of "authentication of who was actually using the cellphones in question," the corroborative cell phone evidence would have been excluded. Stricklin's allegations are nearly identical to those made by Newman in his motion for postconviction relief, and they fail for the same reason.

As we discussed in *Newman*, the files and records affirmatively show an authentication objection would not have been successful and, therefore, Stricklin's counsel could not have been ineffective for failing to make such an objection.[39] The district court correctly denied postconviction relief on this claim without an evidentiary hearing.

### 8. Motion for New Trial

Stricklin alleges his trial counsel was ineffective in handling his motion for new trial. He alleges counsel was deficient in two respects: (1) abandoning certain grounds that had been alleged in the motion and (2) failing to adduce certain evidence at the hearing.

### (a) Abandoned Arguments

Stricklin alleges his trial counsel filed a motion for new trial alleging juror misconduct, irregularities in the proceedings, the verdict was not supported by sufficient evidence, the verdict was contrary to law, error in the jury instructions, and failure to sustain his motion for directed verdict. At the hearing on the motion for new trial, counsel argued only the issue of juror

---

[38] See *id*.

[39] See, *Newman, supra* note 36; *Vo, supra* note 24.

misconduct. Stricklin alleges his counsel abandoned the other arguments out of "neglect and inattention," and he alleges generally that if the other grounds had been pursued they would have been meritorious.

Stricklin's conclusory allegation that the abandoned arguments would have been meritorious is not supported by any factual allegations and is insufficient to show either deficiency in performance or resulting prejudice. The district court did not err in denying postconviction relief on this claim without an evidentiary hearing.

### (b) Failure to Call
### Additional Witness

As noted, Stricklin's motion for new trial was premised on juror misconduct when, after the first day of deliberation, a juror made a telephone call to his brother and discussed the status of his vote. Stricklin alleges his counsel performed deficiently during the hearing on his motion.

At the hearing on the motion for new trial, portions of an affidavit from the juror were admitted into evidence and the juror was questioned by counsel for both Stricklin and Newman. The juror admitted he had telephoned his brother during an evening recess from deliberations. The juror told his brother, who lives in Georgia, that he was a juror in a murder trial, that he was the only juror wanting to vote "not guilty," and that he did not know what he was going to do. During the conversation with his brother, the juror also learned that his father was an acquaintance of Stricklin and Newman. Eventually, the jury returned a unanimous verdict of guilt.

After this hearing, the district court found the juror had committed misconduct, but that Stricklin had not been prejudiced by the misconduct. On direct appeal, we agreed, reasoning:

> [W]e agree with the district court that Stricklin was not prejudiced by the extraneous information received by the juror during the telephone call to his brother.

Whether prejudice resulted from jury misconduct must be resolved by the trial court's drawing reasonable inferences as to the effect of the extraneous information on an average juror. The test to determine whether extraneous material was prejudicial looks to the possible effect of the extraneous material on an average juror's deliberative process.

The extraneous information received by the juror would not have affected an average juror's deliberative process. The district court determined that the juror had testified credibly that his brother informed him only that his father and [Stricklin and Newman] had a neutral acquaintance. . . . We agree with the district court that such knowledge of a neutral family acquaintance would not motivate an average juror to change his vote from not guilty to guilty.[40]

In his postconviction motion, Stricklin alleges his counsel was ineffective because he asked objectionable questions about the juror's thought process and he "should have known better." He also alleges his attorney was deficient for not calling the juror's brother as a witness during the hearing. Because Stricklin's brief argues only the latter allegation, we limit our analysis accordingly.[41]

Stricklin alleges that if his attorney had called the juror's brother to testify, the brother would have established that (1) the juror was aware before beginning deliberations that his family knew Stricklin and Newman and (2) the juror's father once injured his shoulder in an altercation with Newman. The district court found this alleged testimony, even if proved, would have been cumulative to similar testimony adduced during the hearing, so any deficiency could not have prejudiced Stricklin. Our de novo review leads us to the same conclusion.

---

[40] *Stricklin, supra* note 1, 290 Neb. at 569-70, 861 N.W.2d at 391-92.

[41] See *Fetherkile*, *supra* note 31.

Several individuals testified at the hearing on the motion for new trial, including the juror accused of misconduct and the private investigator hired by the defense. Stricklin and Newman also testified via an offer of proof. The private investigator testified the juror had told him that the day before deliberations began, he started thinking he might know Stricklin and Newman, because he recognized some people in the gallery, and that was one of the reasons he called his brother. Newman testified that he knew the juror's family but had not recognized the juror. Newman also described an altercation with the juror's father: "It was just once. Me and him was wrestling around, and I hip tossed him and threw his shoulder out of a socket."

Because the purported testimony of the juror's brother would have been cumulative to other similar testimony, any deficient performance by trial counsel in not calling the brother did not result in prejudice to Stricklin. The district court did not err in denying this claim without an evidentiary hearing.

### 9. Failure to Investigate

Stricklin alleges that despite his request, trial counsel failed to "independently interview, depose, subpoena, or contact" various witnesses. In this regard, Stricklin presents some claims which are nearly identical to Newman's, and other claims which Newman did not raise.

[18,19] A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.[42] A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.[43] Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.[44]

---

[42] *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

[43] *Id.*

[44] *Id.*

### (a) Same Witnesses
### as Newman

Stricklin alleges his counsel failed to "independently interview, depose, subpoena, or contact" many of the same potential witnesses identified in Newman's postconviction motion. Like Newman, Stricklin alleges these witnesses would have testified to hearing that unnamed "Mexicans" or "Latino's" had killed Noriega and Morales; to hearing gunshots near the crime scene around 1:15 p.m. on the day of the shootings; to observing two men standing in a parking lot near the crime scene around 1 p.m. on the day of the shootings; to being scared of Herrera-Gutierrez and not believing his story "add[ed] up"; to observing Herrera-Gutierrez "acting crazy" on the day of the shootings; and to the belief that Noriega and Morales were "killed over drugs."

The district court addressed all of these allegations collectively and concluded Stricklin had failed to allege how deposing or subpoenaing any of these witnesses would have produced a different outcome at trial. For the same reason, we found these allegations insufficient to show prejudice in Newman's postconviction case, we find them insufficient in Stricklin's case.

Considering the alleged testimony of these potential witnesses in the context of all the evidence adduced at trial, we conclude the testimony would not have altered the evidentiary picture and would, at best, have had an isolated or trivial effect on the jury's findings. We find no error in the district court's denial of the claims involving these witnesses without an evidentiary hearing.

### (b) Police Investigation

Stricklin's motion alleges his counsel did not investigate "irregularities" in the police investigation. He alleges the lead detective told crime scene technicians not to preserve blood evidence, gave false testimony at the suppression hearing, failed to check Herrera-Gutierrez' fingerprints against

crime scene prints, and would unexpectedly show up at the jail while Stricklin was meeting with his trial counsel, which Stricklin alleged was an attempt to intimidate him.

Stricklin has not alleged which witnesses would have testified to these irregularities, nor has he alleged how his counsel's failure to investigate any of these alleged actions prejudiced his defense. For these reasons, we find no error in the district court's denial of an evidentiary hearing on this claim.

### (c) Other Possible Suspects

Stricklin's postconviction motion also alleges his counsel failed to investigate and present evidence of two other potential suspects: Marcus Jefferson and James Moore.

Stricklin alleges that 2 days after the shooting, his half brother, Marcus Jefferson, told him that Morales had been "murdered by a guy named James Moore" because Morales had sold Moore "bad drugs" and refused to correct the problem or refund the money. Stricklin alleges he told his counsel about this discussion but counsel failed to investigate Moore as a potential suspect.

Stricklin also alleges he asked his counsel to investigate Jefferson as a potential suspect. Stricklin alleges he told his counsel that after the shootings, Jefferson seemed to know details of the crime that were not yet public. He also alleges Jefferson had a motive to murder Morales, because Morales owed Jefferson "alot [sic] of money" as a result of a fire in Morales' shop that destroyed Jefferson's "show car."

Stricklin's motion generally suggests that if his counsel had investigated this information, Jefferson and Moore would have been identified as suspects and the result of the trial would have been different. We conclude these allegations are sufficient, if proved, to allege both deficient performance and prejudice. Thus, Stricklin is entitled to an evidentiary hearing on his allegation that counsel was ineffective for failing to investigate the information related to Jefferson and Moore.

10. Motion in Limine and
Confidential Informant

Stricklin alleges his trial counsel was ineffective when he failed to "contact, interview, or depose" a confidential informant. Details relating to the confidential informant are set forth in our opinion on Stricklin's direct appeal.[45]

The parties learned, summarized, that a confidential informant had told police that 1 week before the crimes occurred, Morales told the informant he wanted to obtain firearms, because he was "having problems with two black males," one of whom was nicknamed "'Sip.'"[46] The informant told police he was not sure of the origin of Morales' problems with the men but believed it possibly arose from a "'drug tax'" for selling drugs in the neighborhood.[47]

Both Stricklin and Newman filed motions in limine asking the court to allow the police detective to testify about the confidential informant's statements. The district court overruled the motions in limine, finding the evidence was inadmissible hearsay. On Stricklin's direct appeal, we affirmed, reasoning the proffered testimony involved two layers of hearsay and did not fall under any of the exceptions argued to and considered by the trial court.[48]

In his postconviction motion, Stricklin alleges that after learning the identity of the confidential informant, his counsel failed to contact that informant or otherwise investigate what the informant had told police. Stricklin also alleges that he asked his counsel to show the confidential informant a photograph of "Sip" to confirm his identity. Stricklin alleges counsel never did so and, if he had, could have obtained enough corroborating evidence of trustworthiness so that the testimony of

---

[45] *Stricklin, supra* note 1.

[46] *Id*. at 553, 861 N.W.2d at 382.

[47] *Id*. at 554, 861 N.W.2d at 382.

[48] *Id*.

the confidential informant would have been admissible under the residual hearsay exception.[49]

Stricklin's argument appears to misunderstand the nature of the hearsay issue presented on direct appeal. In that appeal, we focused on the admissibility of Morales' statements that he was seeking firearms because he was having issues with "Sip." We held that such a statement was not against Morales' penal interest[50] and was not admissible under the residual hearsay exception.[51] With respect to the latter, we reasoned Morales' statements did not necessarily motivate him to speak truthfully, the statements were not made under oath, Morales was not subject to cross-examination, and there was no evidence he subsequently reaffirmed the statements.[52] We also reasoned that Morales' statements established only that Morales was having trouble with other persons—it did not establish that Stricklin and Newman were innocent of the crimes.

None of the allegations Stricklin makes in his motion would affect this analysis. We find the files and records affirmatively show counsel was not ineffective in this regard. Accordingly, the district court did not err in denying postconviction relief without an evidentiary hearing on this issue.

## 11. Advising Stricklin
### Not to Testify

[20] Stricklin alleges his counsel was ineffective for advising him not to testify. Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to

---

[49] See, Neb. Rev. Stat. §§ 27-803(23) and 27-804(2)(e) (Reissue 2016); *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

[50] See § 27-804(2)(c).

[51] See § 27-804(2)(e).

[52] *Stricklin, supra* note 1.

testify or (2) if counsel's tactical advice to waive the right was unreasonable.[53]

Stricklin waived his right to testify in open court, and he makes no claim that his waiver was not free and voluntary or that counsel interfered with his freedom to decide whether to testify. Instead, he alleges his attorney's advice not to testify was legally unreasonable and thus deficient, because it was incorrect to suggest he could have been asked about details of his prior crimes.

Specifically, Stricklin alleges he chose not to testify based on counsel's advice that if he testified, the State could adduce evidence that he went to prison for "selling drugs" and he would be "'opening up a can of worms.'" He alleges this advisement was inaccurate and suggests his attorney should have advised him that if he testified, the jury could learn he was a convicted felon but that details of his prior crimes would be inadmissible.[54]

Stricklin's postconviction motion does not allege what his testimony would have been at trial or how it would have changed the outcome of the trial. Instead, he alleges he was prejudiced because there was evidence the jury convicted him due to his silence. In support of such a contention, he points to one paragraph in the affidavit of the juror accused of misconduct. In that paragraph, the juror avers he changed his vote to guilty "primarily because [Stricklin and Newman] did not testify and attempt to clear their names." The trial court sustained the State's objection to this paragraph and struck it pursuant to Neb. Rev. Stat. § 27-606(2) (Reissue 2016). We express no opinion on whether an inadmissible averment in a juror's affidavit can ever support a showing of prejudice under *Strickland*, because we conclude, under the first prong of *Strickland*, that counsel's advice was not deficient.

---

[53] *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

[54] See Neb. Rev. Stat. § 27-608(2) (Reissue 2016).

The State points out that at the time of Stricklin's trial, the law was unclear as to whether Stricklin could have been cross-examined under § 27-608(2) about the details of his prior felony drug conviction, and thus, the advice counsel gave him was not unreasonable. In fact, we addressed the interplay between § 27-608 and Neb. Rev. Stat. § 27-609 (Reissue 2016) for the first time in Stricklin's direct appeal, noting it appeared there had been confusion on that issue and we had not previously addressed it.[55]

After analyzing federal court decisions involving the federal equivalent to §§ 27-608(2) and 27-609, we held that when impeaching a witness pursuant to § 27-609, once the conviction is established, the inquiry must end there and it is improper to inquire into the details.[56] And we held that although § 27-608(2) permits questioning during cross-examination on specific instances of prior conduct, those instances are limited to conduct not resulting in a prior conviction.[57]

At the time Stricklin's counsel advised him, this court had not yet addressed the interplay between §§ 27-608(2) and 27-609. Thus, the tactical advice of Stricklin's counsel was, at the time, not unreasonable and the district court did not err in denying this claim of ineffective assistance without an evidentiary hearing.

## 12. Insufficiency of Evidence and Lack of Identification

Stricklin alleges his counsel was ineffective because, on direct appeal, he failed to include assignments of error that (1) the evidence at trial was insufficient to support his convictions and (2) there was an unduly suggestive identification of him as the perpetrator. Stricklin alleges generally that these claims

---

[55] *Stricklin, supra* note 1.

[56] *Id.*

[57] *Id.*

would have been meritorious if raised and further alleges that counsel refused to raise these claims even though Stricklin "beg[ged]" him to. The record and files affirmatively refute these claims.

### (a) Identification

Although Stricklin's counsel did not argue on direct appeal that the pretrial identification procedure was unduly suggestive, the procedure was similar for both Stricklin and Newman. Newman did present such a claim on direct appeal, and we concluded it lacked merit.[58] Thus, Stricklin's appellate counsel could not have been ineffective in failing to raise this claim.[59]

### (b) Insufficient Evidence

Stricklin alleges his counsel was deficient in failing to assign, on direct appeal, that the evidence was insufficient to prove guilt beyond a reasonable doubt, because Herrera-Gutierrez' testimony was not credible and was uncorroborated by forensic or circumstantial evidence. Newman raised the same claim in his direct appeal, and we found it lacked merit, reasoning:

> Newman's arguments invite us to exceed the scope of our appellate review. We decline to do so. We have repeatedly stated that an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. From the jury's verdicts, it is apparent that the jury found Herrera-Gutierrez to be credible. It is not the province of this court to question that determination. This assignment of error is without merit.[60]

---

[58] *Newman, supra* note 26.

[59] See, *Fetherkile, supra* note 31; *State v. McLeod*, 274 Neb. 566, 577, 741 N.W.2d 664, 674 (2007) ("[d]efense counsel is not ineffective for failing to raise an argument that has no merit").

[60] *Newman, supra* note 26, 290 Neb. at 582, 861 N.W.2d at 133-34.

The same analysis applies here. Thus, if Stricklin's counsel had assigned error to the sufficiency of the evidence on direct appeal, the assignment would have been meritless. The district court did not err in denying postconviction relief without an evidentiary hearing on this claim.

### 13. Failure to Obtain
#### Record for Appeal

Stricklin alleges his counsel was ineffective on direct appeal because he failed to include a complete transcript in the appellate record. Specifically, Stricklin argues his attorney failed to include two items in the appellate transcript: (1) his motion to sever and (2) a supplemental jury instruction.

Stricklin's postconviction motion does not allege how these omissions affected the outcome of his appeal. His allegations are therefore insufficient to allege prejudice and do not warrant an evidentiary hearing. The district court correctly denied postconviction relief on these claims without an evidentiary hearing.

### 14. Actual Innocence

Stricklin alleges he is entitled to postconviction relief because he is actually innocent. He alleges all of his allegations of ineffective assistance of counsel support this claim, and he also alleges that the evidence adduced was so lacking in credibility that it cannot be used to establish his guilt.

[21] Newman made essentially the same allegations and raised the same argument in his appeal from the district court's denial of an evidentiary hearing on his motion for postconviction relief. As we noted in our resolution of Newman's appeal, the threshold showing that must be made to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high, because after a fair trial and conviction, the presumption of innocence vanishes.[61]

---

[61] *Newman, supra* note 36, citing *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

Stricklin's allegations, like those made by Newman, largely attack the weight of the evidence used against him and do not meet the high threshold. The district court did not err in denying postconviction relief on this claim without an evidentiary hearing.

## V. CONCLUSION

The district court properly denied an evidentiary hearing on most of Stricklin's allegations, as Stricklin either failed to make sufficient factual allegations to support his claims or the files and records affirmatively show he is not entitled to relief.

However, Stricklin is entitled to an evidentiary hearing on his claims that trial counsel (1) failed to file notice of and present evidence of his alibi defense and (2) failed to investigate information regarding potential suspects Jefferson and Moore.

We thus affirm in part, and in part reverse and remand for an evidentiary hearing limited to these two claims.

Affirmed in part, and in part reversed
and remanded with directions.

Heavican, C.J., not participating.