Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/17/2018 09:08 AM CDT

State of Nebraska, appellee, v.
Terrell E. Newman, appellant.

___ N.W.2d ___

Filed August 17, 2018.    No. S-17-842.

1. **Appeal and Error.** The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief.

2. ____. An assignment of error raised for the first time in a reply brief is untimely and will not be considered by an appellate court.

3. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

4. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

5. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

6. ____: ____: ____. A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

7. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

8. \_\_\_\_: \_\_\_\_. In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.

9. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.

10. \_\_\_\_: \_\_\_\_: \_\_\_\_. Claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review.

11. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on direct appeal of ineffective assistance of trial counsel, an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.

12. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

13. \_\_\_\_: \_\_\_\_. To show that counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.

14. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

15. **Effectiveness of Counsel: Proof.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), deficient performance and prejudice, may be addressed in either order.

16. **Attorneys at Law: Effectiveness of Counsel.** A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

17. **Trial: Effectiveness of Counsel: Evidence.** A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.

18. **Rules of Evidence.** Neb. Rev. Stat. § 27-901(1) (Reissue 2016) does not impose a high hurdle for authentication or identification.

19. **Rules of Evidence: Proof.** A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all probabilities inconsistent with authenticity. Rather, if the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirements of Neb. Rev. Stat. § 27-901(1) (Reissue 2016).

20. **Sentences.** If there is a discrepancy between the oral pronouncement of a valid sentence and the later written order, the oral pronouncement controls calculation of the prison term.

21. **Rules of Evidence: Juries: Testimony: Affidavits.** Neb. Rev. Stat. § 27-606(2) (Reissue 2016) prohibits a juror from testifying as to any matter or statement occurring during the course of the jury's deliberations. Thus, a juror's affidavit may not be used to impeach a verdict on the basis of jury motives, methods, misunderstanding, thought processes, or discussions during deliberations.

22. **Postconviction: Effectiveness of Counsel: Proof.** A petitioner's postconviction claims that his or her defense counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence the investigation would have procured and how it would have affected the outcome of the case.

23. **Postconviction: Constitutional Law.** A claim of actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act.

24. **Postconviction: Evidence.** The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process.

25. **Postconviction: Evidence: Presumptions: Proof.** The threshold to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high. Such a petitioner must make a strong demonstration of actual innocence, because after a fair trial and conviction, the presumption of innocence vanishes.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed in part, and in part reversed and remanded with directions.

Stuart J. Dornan and Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Hall, District Judge.

Stacy, J.

A jury found Terrell E. Newman guilty of two counts of first degree murder, three counts of use of a deadly weapon to commit a felony, attempted intentional manslaughter, and possession of a deadly weapon by a prohibited person.[1] He was sentenced to life imprisonment for the murders and to additional terms of years for the other offenses, the sentences to run consecutively. We affirmed his convictions and sentences on direct appeal.[2]

Newman then moved for postconviction relief, raising claims of ineffective assistance of counsel and a claim of actual innocence. The district court denied relief without conducting an evidentiary hearing. Newman filed this timely appeal. We affirm in part, and in part reverse and remand for an evidentiary hearing.

---

[1] *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015).

[2] *Id.*

## I. FACTS

Newman's trial was consolidated with codefendant Derrick U. Stricklin. The underlying facts are fully set forth in our opinion affirming Stricklin's convictions and sentences.[3] Summarized, Newman's convictions arose from the shooting deaths of Carlos Morales and Bernardo Noriega during a drug transaction at an automobile body shop owned by Morales. Jose Herrera-Gutierrez was also present during the drug transaction and the shootings, and he was the State's primary witness at trial. Herrera-Gutierrez identified Newman and Stricklin as the shooters and testified that he recognized both men from prior visits to Morales' shop. He had seen Stricklin approximately four times at the shop, and he had seen Newman approximately three times at the shop.

The State's theory of the case was that Newman and Stricklin committed the crimes together. Newman's cell phone records showed that Newman was in communication with both Morales and Stricklin on the day of the shootings, and also showed that Newman's cell phone was in the area of the murder scene during the relevant timeframe.[4]

A jury found Newman guilty of all the charges. He was sentenced to consecutive sentences of life imprisonment for each murder conviction, 15 to 25 years' imprisonment for each use of a deadly weapon conviction, 20 months' to 5 years' imprisonment for the attempted manslaughter conviction, and 15 to 25 years' imprisonment for the possession of a deadly weapon conviction.[5] The district court denied his motion for new trial, and he filed a direct appeal.

On direct appeal, Newman was represented by different counsel. Appellate counsel raised numerous assignments of error challenging Newman's identification by Herrera-Gutierrez, the sufficiency of the evidence, the admission of certain evidence,

---

[3] *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[4] *Id.*

[5] *Newman, supra* note 1.

the exclusion of other evidence, limitations imposed on the cross-examination of Herrera-Gutierrez, the overruling of a motion for new trial based on juror misconduct, and the overruling of a motion to withdraw his rest.

Newman's appellate counsel also alleged trial counsel had been ineffective in failing to (1) introduce certain testimony at the hearing on the motion for new trial, (2) object to certain jury instructions, and (3) adequately investigate an alibi defense. In the direct appeal, we concluded the files and records affirmatively showed the jury instruction claim lacked merit and we found the record was insufficient to address the other two allegations of ineffective assistance of trial counsel.[6]

After we affirmed his convictions and sentences, Newman filed the instant motion for postconviction relief. He alleges his appellate counsel was ineffective in (1) failing to obtain a complete record prior to Newman's direct appeal and (2) failing to raise on direct appeal claims that his trial counsel was ineffective for (a) failing to investigate certain witnesses, including alibi witnesses; (b) failing to object to certain jury instructions; (c) failing to present evidence of third-party guilt via a motion in limine; (d) failing to object to the authentication of cell phone records; (e) failing to object to the truth-in-sentencing advisement; (f) failing to present certain evidence at the motion for new trial; and (g) failing to hire a crime scene investigator. Newman also alleges in his postconviction motion, and argues in his brief, that he is actually innocent of the crimes. The district court denied the postconviction motion without conducting an evidentiary hearing. Newman filed this appeal.

## II. ASSIGNMENTS OF ERROR

Newman assigns the district court erred in (1) denying him an evidentiary hearing on his motion for postconviction relief, (2) finding he did not meet the threshold for actual innocence, and (3) denying his motion for postconviction relief.

---

[6] *Id.*

Newman also attempts to raise additional assignments of error in his reply brief, including that he was denied an opportunity to amend his postconviction motion and that additional jury instructions were flawed. The State filed an objection, arguing Newman could not raise new assignments of error in his reply brief. We agree.

[1,2] The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief.[7] An assignment of error raised for the first time in a reply brief is untimely and will not be considered by the court.[8] We therefore limit our analysis to the assignments made and argued in Newman's original appellate brief. We note for the sake of completeness that Stricklin properly raised nearly identical assignments of error in his appeal from the district court's denial of his motion for postconviction relief, and we found those assignments lacked merit.[9]

## III. STANDARD OF REVIEW

[3] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[10]

## IV. ANALYSIS

### 1. General Propositions Governing Postconviction

[4,5] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional

---

[7] *Rodriguez v. Surgical Assoc.*, 298 Neb. 573, 905 N.W.2d 247 (2018).

[8] See *id.*

[9] See *State v. Stricklin, post* p. 794, ___ N.W.2d ___ (2018).

[10] *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017); *State v. Watson*, 295 Neb. 802, 891 N.W.2d 322 (2017).

rights such that the judgment was void or voidable.[11] In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[12]

[6-8] A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.[13] If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.[14] Thus, in a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.[15]

[9] Here, Newman alleges he received ineffective assistance of counsel. A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.[16] Newman was represented by different counsel on direct appeal

---

[11] *Vela, supra* note 10.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

[16] *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).

than at trial. He therefore cannot raise on postconviction any claims of ineffective assistance of trial counsel that were not preserved on direct appeal, as those claims would be procedurally barred.[17]

[10,11] However, claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review.[18] When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel, an appellate court will first look at whether trial counsel was ineffective under the test in *Strickland v. Washington*.[19] If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.[20]

[12-14] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[21] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[22] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[23] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[24] A reasonable probability does not require that it be more likely than not that the deficient

---

[17] See *id.*

[18] *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

[19] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *State v. Glass*, 298 Neb. 598, 905 N.W.2d 265 (2018).

[20] See *Glass, supra* note 19.

[21] *Strickland, supra* note 19.

[22] *Vela, supra* note 10.

[23] See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018).

[24] *Vela, supra* note 10.

performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[25]

[15] The two prongs of the ineffective assistance of counsel test under *Strickland*, deficient performance and prejudice, may be addressed in either order.[26] We examine Newman's allegations under this standard.

### 2. Failure to Investigate

[16,17] A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.[27] A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel.[28] Strategic decisions made by trial counsel will not be second-guessed so long as those decisions are reasonable.[29]

### (a) Alibi Defense

Newman's motion for postconviction relief alleges his appellate counsel was ineffective for failing to raise on direct appeal that his trial counsel was ineffective for failing to preserve and submit his alibi defense. But the record shows appellate counsel did raise this claim on direct appeal, and we found the record was insufficient to address it.[30] Thus, Newman's allegation that appellate counsel was ineffective for failing to raise the issue is without merit.

However, Newman's postconviction motion also alleges his trial counsel was ineffective for failing to preserve and submit

---

[25] *Id.*

[26] *Haynes, supra* note 23.

[27] *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

[28] *Id.*

[29] *Id.*

[30] *Newman, supra* note 1.

his alibi defense. Because he raised this claim in his direct appeal and we found the record was insufficient to consider or rule on that claim, it is not procedurally barred.[31] We therefore consider whether Newman has alleged facts sufficient to warrant an evidentiary hearing on this claim.

Newman's postconviction motion alleges his trial counsel failed to "independently interview, depose, or subpoena" four witnesses whom he alleges would have established an alibi defense. Newman alleges that Kevin Riley and Janet Mariscal would have testified Newman "was either at Clayton's BBQ restaurant or on a run to Chubb[] Foods to purchase supplies at or near the time of the shooting." Newman further alleges that two unnamed "Employees of Chubb[] Foods," one working at the customer service counter and the other at the cash register, would have "confirmed Newman's presence at Chubb[] Foods at or near the time of the shooting."

The district court denied an evidentiary hearing on this claim. It reasoned that because the allegations were vague as to time, they did not "definitively state that [Newman] was not at the murder scene and merely suggest [Newman] may have been at these other places at some point in the day." Moreover, the court found no prejudice could have resulted from counsel's failure to develop this evidence given the overwhelming evidence of Newman's guilt provided by Herrera-Gutierrez' eyewitness testimony and cell phone records placing Newman in the area at or near the time of the murders.

It is true Newman has not alleged a specific time he claims he was at the restaurant or the grocery store. But in his brief, Newman argues he used the general phrase "at or near the time of the shooting" in his postconviction motion, because there was uncertainty at trial about the exact time of the murders.[32] He argues the allegations in his motion are sufficient to show both deficient performance and prejudice, because they show trial counsel failed to present testimony from four

---

[31] See *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007).

[32] Brief for appellant at 10.

witnesses who would have testified Newman was somewhere else at the time of the murders. The State, in its response, generally agrees with the district court's conclusion that even if trial counsel was deficient in this regard, there could be no prejudice to Newman in light of the overwhelming evidence of his guilt adduced at trial. Our de novo review persuades us otherwise.

While we agree the eyewitness identification and corroborating cell phone records, in the context of the evidence admitted at trial, provided overwhelming evidence of guilt, we cannot overlook the fact that the alibi evidence Newman alleges his attorney should have investigated could, if proved, have contradicted the eyewitness identification. Newman alleges, summarized, that four witnesses would have testified he was at a specific location other than the crime scene at or near the time of the murders. This testimony could have contradicted Herrera-Gutierrez' eyewitness testimony and, depending on the location of the restaurant and the grocery store, may also have affected the weight of the cell phone record evidence. Thus, depending on the evidence actually presented and found credible, there may be a reasonable probability that if such evidence had been presented at trial, the result of the proceeding could have been different.

In Newman's direct appeal, we found the record was insufficient to evaluate the substance of this particular claim of ineffective assistance. He presents the same claim on postconviction, and because the record is still insufficient to analyze the claim, Newman is entitled to an evidentiary hearing.[33]

## (b) Other Witnesses

Newman also alleges his appellate counsel was ineffective for failing to assign as error that trial counsel was ineffective

---

[33] See, *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015) (district court erred in failing to grant evidentiary hearing on ineffective assistance claim where claim was raised on direct appeal but record was insufficient to analyze claim, and same claim was raised on postconviction); *State v. Seberger*, 284 Neb. 40, 815 N.W.2d 910 (2012) (same).

for failing to "independently interview, depose, or subpoena" other potential witnesses "despite Newman's request." Newman alleges two of these witnesses would have testified that unnamed "Mexicans" or "Latino's" killed Noriega and Morales; one would have testified to hearing gunshots near the crime scene around 1:15 p.m. on the day of the shootings; one would have testified she observed two men standing in a parking lot near the crime scene around 1 p.m. on the day of the shootings; one would have testified she was afraid of Herrera-Gutierrez and did not think his story "add[ed] up"; two would have testified to observing Herrera-Gutierrez "acting crazy" on the day of the shootings; and one would testify she thought the murders involved drugs.

The district court addressed all of these allegations collectively and concluded Newman had failed to allege how deposing or subpoenaing any of these witnesses would have produced a different outcome at trial. We agree that Newman's allegations regarding these other witnesses did not show a reasonable likelihood that, absent the alleged deficiency, the outcome at trial would have been different.

In *Strickland*, the U.S. Supreme Court addressed how a court should approach the prejudice prong of an ineffective assistance of counsel claim:

> In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account

of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[34]

Considering the alleged testimony of these eight potential witnesses in the context of all the evidence adduced at trial, we conclude the alleged testimony would not have altered the evidentiary picture and would, at best, have had an isolated or trivial effect on the jury's findings. We find no error in the district court's denial of this claim without an evidentiary hearing.

In sum, we conclude Newman is entitled to an evidentiary hearing on his claim relating to his alibi defense, but is not entitled to an evidentiary hearing on any of his other claims of failure to interview, depose, or subpoena potential witnesses.

### (c) Cross-Examination

Newman also alleges his appellate counsel was ineffective for failing to raise, on direct appeal, that trial counsel failed to adequately investigate existing files and prepare for the trial testimony of Nelson Martinez-Reyes. This witness testified at trial that he saw a man matching Herrera-Gutierrez' description near the murder location at approximately 11 a.m. on the day of the shootings, but he did not know the race of the male. Newman alleges Herrera-Gutierrez is Hispanic, and claims his trial counsel failed to cross-examine Martinez-Reyes about a prior statement in which he reported seeing a white male near the scene of the crime. We conclude this allegation of failure to cross-examine a witness on a minor credibility issue is not sufficient to demonstrate either deficient performance or resulting prejudice. Newman was not entitled to an evidentiary hearing on this claim.

---

[34] *Strickland, supra* note 19, 466 U.S. at 695-96.

### 3. JURY INSTRUCTIONS

Newman alleges his appellate counsel was ineffective for failing to assert, on direct appeal, that trial counsel was ineffective for not objecting to "flawed" jury instructions Nos. 5, 6, 11, 12, and 18. Newman's motion specifically alleges instructions Nos. 5, 11, and 12 were "flawed" because they did not conform to the pattern Nebraska Jury Instructions.

The district court found the claim that trial counsel was ineffective for failing to object to instructions Nos. 5, 11, and 12 had been raised on direct appeal and rejected by this court. It reasoned the factual allegations as to the other jury instructions failed to specifically allege deficient performance and prejudice. Our de novo review leads us to the same conclusion.

Newman's brief to this court generally concedes that the argument he presents as to instructions Nos. 5, 11, and 12 was resolved on direct appeal. His brief also generally concedes that his postconviction motion did not include sufficient allegations as to instructions Nos. 6 and 18. The district court did not err in denying postconviction relief without an evidentiary hearing on this issue.

### 4. CONFIDENTIAL INFORMANT

Newman alleges his appellate counsel was ineffective for failing to raise, on direct appeal, that trial counsel was ineffective for not doing more to secure the admission of testimony regarding an out-of-court statement made by a confidential informant. The confidential informant's statement related to the possible involvement of a man known as "Sip" in the crimes.

Admissibility of the testimony regarding the confidential informant's statement was addressed in the direct appeal of Newman's codefendant Stricklin. Before trial, both Newman and Stricklin filed motions in limine seeking a ruling on the admissibility of testimony from a detective about statements a confidential informant made to the detective. The statements made to the detective were essentially that one of the murder

victims, Morales, had attempted to buy two firearms from the informant, telling the informant that he was "having problems with two black males" and that Morales told the informant one of the males was nicknamed "'Sip.'"[35] The detective showed the informant photographs of Newman and Stricklin, and the informant did not identify either as "Sip."

The State objected to this evidence, arguing it contained two levels of hearsay—Morales' statements to the informant and the informant's statements to the detective. The district court excluded the evidence on that basis, and we affirmed on appeal.

Newman's motion for postconviction relief generally alleges that if trial counsel had done more, the statements from the confidential informant would have been admitted. But Newman's motion does not identify any actions that would have removed the hearsay issues we addressed on direct appeal, and thus, we agree with the district court that these allegations are insufficient to show ineffective assistance of counsel. The district court properly found Newman is not entitled to an evidentiary hearing on this claim.

### 5. CELL PHONE AUTHENTICATION

Evidence at trial showed a cell phone or phones associated with Newman were used to contact Stricklin and Morales on the date of the murders, and evidence showed Newman received six calls between 11:42 a.m. and 12:36 p.m. using a cell tower in the immediate vicinity of Morales' shop. Newman alleges his appellate counsel was ineffective for failing to assign, on direct appeal, that trial counsel was ineffective for failing to require the State to "authenticate" who was actually using the cell phones associated with his name. His postconviction motion alleges that if trial counsel had objected on authentication grounds, the State would have been unable to prove he was actually using the cell phones, and the

---

[35] *Stricklin, supra* note 3, 290 Neb. at 553, 861 N.W.2d at 382.

substantial cell phone evidence linking him to the murders would have been inadmissible.

The district court found this allegation was without merit, reasoning that such an objection would not have been successful. We agree.

[18,19] According to Neb. Rev. Stat. § 27-901(1) (Reissue 2016), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Section 27-901 does not impose a high hurdle for authentication or identification.[36] Indeed, a proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all probabilities inconsistent with authenticity.[37] Rather, if the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirements of § 27-901.[38]

The files and records affirmatively show authentication was established. Newman's former girlfriend testified at trial that she bought him a cell phone with a certain number and also called him at a different cell phone number. Law enforcement obtained the cell phone records associated with those two numbers, and the cell phone associated with the second number was found on Newman at the time of his arrest. This cell phone evidence was properly admitted at trial.[39]

The files and records affirmatively show that if Newman's counsel had objected on the ground the State had not "authenticated" who was actually using the cell phones, such an objection would not have been successful. Newman's counsel did not perform deficiently in this regard, and the district court

---

[36] *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014).

[37] *Id.*

[38] *Id.*

[39] See *Stricklin, supra* note 3.

correctly denied postconviction relief on this claim without an evidentiary hearing.

### 6. TRUTH-IN-SENTENCING ADVISEMENT

Newman alleges his appellate counsel was ineffective for failing to assign as error, on direct appeal, that trial counsel was ineffective for failing to object to the truth-in-sentencing advisement given by the trial court. His postconviction motion alleges the truth-in-sentencing advisement, delivered in open court, informed him he would be given credit for time served of 405 days, but the written sentencing order gave him credit for only 403 days. He argues the 2-day difference in the sentences imposed is prejudicial.

[20] The district court found Newman's claim lacked merit, because he suffered no prejudice. It reasoned that in Nebraska, if there is a discrepancy between the oral pronouncement of a valid sentence and the later written order, the oral pronouncement controls calculation of the prison term.[40]

Our de novo review of the record confirms this rule was applied in Newman's case. The commitment order entered after Newman's sentencing awarded him credit for 405 days served. Thus, the files and records thus affirmatively show that Newman has suffered no prejudice, and the district court properly denied Newman an evidentiary hearing on this claim.

### 7. MOTION FOR NEW TRIAL

Newman's postconviction motion includes several allegations that his appellate counsel was ineffective for failing to raise, on direct appeal, the ineffective assistance of trial counsel related to the motion for new trial based on juror misconduct. His brief to this court argues only two of those allegations.

---

[40] See *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

We thus limit our review to those errors both assigned and argued to this court.[41]

Before addressing these claims, we note that in our opinion on Newman's direct appeal, we found the record was insufficient to address Newman's claim that his trial counsel was ineffective for failing to timely offer an affidavit of a nonjuror during the hearing on Newman's motion for new trial. Newman did not include such an allegation in his postconviction motion. Instead, he alleges his appellate counsel was ineffective for failing to raise other instances of ineffective assistance related to the hearing on his motion for new trial. To understand his claims, we briefly summarize the basis for Newman's motion for new trial.

Newman alleged he was entitled to a new trial because one of the jurors had communicated with the juror's brother, a nonjuror, after the first day of deliberations and before a verdict had been reached. A hearing was held on the motion for new trial, and the juror testified that he telephoned his brother and learned that their father was acquainted with Newman and Stricklin. But the juror testified he did not know either of them personally.

Newman's postconviction motion alleges his appellate counsel was ineffective for failing to raise, on direct appeal, that his trial counsel was ineffective for (1) failing to object to certain remarks by counsel and (2) conceding that portions of the juror's affidavit were inadmissible.

### (a) Failure to Object

Newman's postconviction motion alleges his trial counsel should have objected when an attorney appointed to represent the juror accused of misconduct made substantive representations to the trial court instead of eliciting such information

---

[41] See *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018) (alleged error must be both specifically assigned and specifically argued to be considered by appellate court).

from the juror in question. Newman alleges his appellate counsel was ineffective for failing to assign, on direct appeal, that his trial counsel was deficient in failing to object to the remarks of the juror's attorney.

At the hearing on the motion for new trial, the parties disputed the admissibility of the juror's affidavit. Portions of that affidavit averred that during trial, the juror

> realized that I recognized people in the audience who were familiar to me, then subsequently realized that I knew both [Newman and Stricklin] and my family has family relationships with them. In fact, at some point I learned that . . . Newman had an altercation with my father . . . and injured [my father's] shoulder[.]

During the hearing, the juror's attorney told the court the juror had not actually learned of the altercation between Newman and the juror's father until after the verdicts were returned. The court then asked the juror's attorney whether the juror recalled knowing Newman and Stricklin prior to returning the verdicts, and the attorney responded, "No."

Newman alleges that due to his counsel's deficient performance in not objecting to this colloquy, the juror's attorney was permitted to testify on behalf of his client and Newman was deprived of the opportunity to cross-examine the juror. The files and records affirmatively refute this claim.

The records shows that contrary to the allegations made in Newman's motion for postconviction relief, Newman's trial counsel did object to counsel's remarks, arguing the juror's attorney should not be permitted to testify for his client. The court agreed. Then both Newman and Stricklin were permitted to call the juror as a witness and ask questions about the timing and substance of the telephone conversation the juror had with his brother.

Because the files and records affirmatively refute Newman's claim that his counsel failed to object to the complained-of statements by the juror's attorney, and also refute any claim that he was denied an opportunity to question the juror directly,

the postconviction court did not err in denying an evidentiary hearing on this issue.

### (b) Concession at Hearing

Newman also alleges his appellate counsel was ineffective for failing to raise, on direct appeal, that his trial counsel was ineffective during the motion for new trial, because he improperly conceded that a portion of the juror's affidavit was inadmissible.

The relevant portion of the affidavit averred, "During the deliberations, the other jurors persuaded me to change my vote to guilty primarily because [Newman and Stricklin] did not testify and attempt to clear their names." Newman alleges his trial counsel was ineffective, because even though counsel drafted the juror's affidavit after interviewing the juror, counsel "conceded and became submissive during the hearing on the motion for new trial" and admitted that this paragraph of the affidavit was not admissible under Nebraska law. The State argues that trial counsel was not ineffective, because that portion of the affidavit was plainly inadmissible under Nebraska law and was properly stricken by the trial court.

Neb. Rev. Stat. § 27-606(2) (Reissue 2016) provides:

> Upon inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

[21] Section 27-606(2) prohibits a juror from testifying as to any matter or statement occurring during the course of the

jury's deliberations. Thus, a juror's affidavit may not be used to impeach a verdict on the basis of jury motives, methods, misunderstanding, thought processes, or discussions during deliberations.[42] Because the record shows counsel did not perform deficiently in conceding this point, the district court did not err in denying postconviction relief without an evidentiary hearing on this claim.

### 8. Crime Scene Investigator

Newman alleges appellate counsel was ineffective in failing to raise, on direct appeal, that trial counsel was ineffective in failing to hire a crime scene investigator. He alleges various items at the crime scene were inconsistent with Herrera-Gutierrez' testimony and that counsel should have hired an investigator to rebut these inconsistencies.

Specifically, Newman alleges only one set of footprints "'with evidentiary value'" was found at the scene, but Herrera-Gutierrez testified five people went in to the shop where the murders occurred and only three came out. He alleges Herrera-Gutierrez testified the victims were tied up and shot "'real fast,'" but blood splatter at the scene was on the ceiling and the outside landing. He alleges Herrera-Gutierrez testified that the victims were shot as they lay face down, but a shell casing was found underneath one of their bodies.

Newman's postconviction motion concedes that trial counsel cross-examined the State's witnesses on this evidence, and the record confirms that Newman's counsel presented evidence regarding each of these issues either on direct examination or through cross-examination at trial. But Newman alleges trial counsel should also have hired a "crime scene investigator or specialist" who "would and could have rebutted" this evidence. Newman's motion presents no allegations regarding what such an investigator or specialist would have testified to if called, or how such testimony would have rebutted the state's evidence or affected the outcome of the case.

---

[42] See *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

[22] A petitioner's postconviction claims that his or her defense counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence the investigation would have procured and how it would have affected the outcome of the case.[43] The district court correctly concluded that Newman's conclusory allegations about the failure to hire a crime scene investigator did not warrant an evidentiary hearing.[44]

### 9. Failure to Obtain Complete Record

Newman's postconviction motion alleges appellate counsel was ineffective for failing to obtain the complete record prior to the direct appeal. He alleges the missing portion of the record was a supplemental jury instruction not included in the final instructions sent to the jury.

Newman's motion does not allege how his lack of access to that instruction affected his appeal or what assignment of error was not raised on appeal due to the lack of access to that record. The district court thus correctly found Newman did not plead sufficient facts to necessitate an evidentiary hearing on this claim.

### 10. Actual Innocence

Newman's postconviction motion alleges he was actually innocent of the crimes. He supports this allegation by referencing all of his alleged claims of ineffective assistance of counsel, in addition to other unassigned errors during trial. In his brief to this court, Newman contends the errors of appellate counsel in failing to raise such issues on direct appeal "taken as a whole establish that [he] was actually innocent."[45] The trial court found Newman's allegations of

---

[43] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[44] See *id*.

[45] Brief for appellant at 20.

actual innocence were insufficient to show a constitutional violation. We agree.

[23-25] In *State v. Dubray*,[46] we explained:

A claim of actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act. The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process. The threshold to entitle a prisoner to an evidentiary hearing on such a postconviction claim is "'extraordinarily high.'" Such a petitioner must make a strong demonstration of actual innocence because after a fair trial and conviction, the presumption of innocence vanishes.

Newman has not met his extraordinarily high threshold of alleging facts sufficient to show he is actually innocent of the crimes. The district court did not err in denying an evidentiary hearing on this claim.

## V. CONCLUSION

For the foregoing reasons, we conclude the district court erred in denying Newman an evidentiary hearing on his claim that trial counsel was ineffective for failing to investigate and present alibi evidence from Riley, Mariscal, and two employees of Chubb Foods, and we reverse the court's decision in part and remand the matter for an evidentiary hearing limited to that claim. In all other respects, we affirm the district court's denial of postconviction relief without an evidentiary hearing.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., not participating.

---

[46] *Dubray, supra* note 18, 294 Neb. at 947-48, 885 N.W.2d at 551, quoting *State v. Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013). Accord *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).