IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BENSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MICHAEL D. BENSON, APPELLANT.

Filed June 7, 2022.    No. A-21-639.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Taylor N. Renfro and Stuart J. Dornan, of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

This is a postconviction appeal. In 2019, following a jury trial, Michael D. Benson was convicted of one count of second degree murder, one count of use of a deadly weapon to commit a felony, one count of possession of a deadly weapon by a prohibited person, and two counts of tampering with a witness. Benson was sentenced to a total of 67 to 89 years' imprisonment. On direct appeal, the Nebraska Supreme Court affirmed Benson's convictions. See *State v. Benson*, 305 Neb. 949, 943 N.W.2d 426 (2020).

In the present appeal, Benson appeals the decision of the district court for Douglas County which denied his motion for postconviction relief without an evidentiary hearing. In this appeal, Benson generally alleges that the district court erred in denying his motion without an evidentiary hearing. He then makes five more specific assignments of error which will be detailed later in this opinion. As will be explained later herein, not all of Benson's assignments of error match the

- 1 -

claims raised in his postconviction motion. Moreover, in his brief he argues issues not mentioned in his assignments of error.

For the reasons that follow, we affirm the order of the district court denying Benson's motion for postconviction relief without an evidentiary hearing.

BACKGROUND

A full recitation of the facts underlying Benson's convictions is not necessary to our review of his postconviction appeal. As such, what follows is a summary of facts which provide the necessary context for the present appeal. A full recitation of the facts underlying Benson's convictions can be found in his direct appeal in *State v. Benson, supra.*

In April 2018, Benson was charged by information with one count of murder in the second degree, a Class IB Felony, and one count of use of a deadly weapon to commit a felony, a Class IC felony. The State later amended the original information to add one count of possession of a deadly weapon by a prohibited person and three counts of tampering with a witness. After a preliminary hearing on the added charges, one of the counts of tampering with a witness was dismissed.

Prior to trial, Benson moved to suppress statements that he made to law enforcement on September 20 and 23, 2017. In addition, Benson moved to suppress cellular phone data obtained from his telephone as a result of a search warrant. Benson alleged that there was insufficient probable cause and the dates on the search warrant were incorrect. Following two separate hearings with respect to the motions to suppress, the district court overruled each of Benson's motions to suppress.

The following evidence adduced at trial is pertinent to the issues raised in this appeal. On September 18, 2017, law enforcement responded to 911 calls regarding a shooting at the intersection of 60th and L streets in Omaha. Upon law enforcement's arrival at the scene of the shooting, James Womack was observed lying on a median in the street, with apparent gunshot wounds. Womack later died from his injuries. During the course of law enforcement's investigation, video recordings of the intersection where the shooting took place were obtained. The recordings show Womack get out of his vehicle and approach a tan pickup. Womack can be seen to hit the tan pickup's window with his hand and then say something to the occupants. Womack then turned around and started to return to his own vehicle. At this point, one occupant of the tan pickup truck fired a gun hitting Womack twice in the back. At the crime scene, officers found one spent shell casing.

Soon thereafter law enforcement located the tan pickup and obtained a search warrant in order to search it. Inside the truck, law enforcement found a receipt from a local grocery store for flowers. Investigators also found gunshot residue on various surfaces of the passenger area of the pickup. The pickup's registration listed Benson as a co-owner of the vehicle. Law enforcement obtained surveillance video from the grocery store where the flowers were purchased depicting Benson entering and leaving the store and getting into the pickup. The receipt from the automobile dealership listed Benson's cell phone number. Benson's cellular phone records placed his phone in the area of the shooting at the time it occurred.

During the course of their investigation, law enforcement located a spent shell casing stamped "5.7 by 28" on the street near Womack. Law enforcement also found a spent casing on

the floor between the front passenger seat and the passenger door, as well as in the bed of the tan pickup truck. A firearms analyst employed by the Omaha Police Department, Angela Harder, testified that based on her analysis, the casing found near Womack and the casing found in the bed of the pickup were fired by the same firearm. However, she explained that there was not enough information to definitively conclude that the third casing came from the same firearm. She also testified that this casing was an unusual caliber.

Harder acknowledged that she did not conduct any swabs of any of the casings to attempt to obtain DNA evidence or fingerprints. Nor was it the policy of the Omaha Police Department to swab spent casings for DNA or fingerprints. She explained that it would be difficult to find a fingerprint on a spent casing because the high heat produced upon the firing of a weapon typically eradicates the sweat and oils that create a fingerprint. She testified that the same conditions typically would remove or destroy any DNA. Harder testified that at one time, they did attempt to find fingerprints on shell casings and they did submit shell casings for DNA analysis. After meeting with representatives of the State Crime Lab and UNMC DNA lab, they discontinued this practice due to a track history of such submissions not resulting in finding the presence of DNA and their own observations that fingerprints were rarely, if ever found. Kristen Smith, a criminalist employed by the Omaha Police Department participated in processing the crime scene. She acknowledged that the casings were not swabbed for fingerprints and DNA. She also explained the heat, gases, and friction will generally destroy fingerprints and DNA from the casings.

At trial, the State also called Marvin Stockdale, who was in jail at the same time as Benson. Stockdale testified that Benson spoke to him about the case, stating that he had gotten rid of the gun used in the shooting, but was worried about the forensics on his hooded sweatshirt.

At the conclusion of the trial, Benson was found guilty by a jury of all charges. He was subsequently sentenced to 40 to 50 years' imprisonment for second degree murder, 20 to 25 years' imprisonment for use of a deadly weapon to commit a felony, 5 to 10 years' imprisonment for possession of a deadly weapon by a prohibited person, and 1 to 2 years' imprisonment on each count of tampering with a witness. The sentences were all ordered to be served consecutively.

Benson's trial counsel filed a direct appeal on his behalf. On direct appeal, Benson argued that the district court erred in failing to suppress statements Benson made to law enforcement on September 20 and 23, 2017, failing to suppress his cell phone data acquired pursuant to a search warrant issued on September 20, and overruling his motion to sever the two tampering counts from the initial charges. He also argued that there was insufficient evidence to support the convictions.

The Supreme Court affirmed his convictions. Specifically, the Supreme Court found that the district court did not err in overruling Benson's motions to suppress. In addition, the Supreme Court found that the district court did not err when it overruled his motion to sever the two tampering charges from the other charges. Finally, the Supreme Court found that there was sufficient evidence to support the convictions.

On March 8, 2021, Benson, acting pro se, filed his verified motion for postconviction relief. In the motion, Benson alleged that he received ineffective assistance of trial counsel, that the State committed prosecutorial misconduct, and that there was insufficient evidence to support his convictions. With respect to his claims for ineffective assistance of trial counsel, he alleged that his counsel did not properly investigate the case because his counsel failed to pursue DNA or fingerprint evidence on shell casings that were found in his vehicle and at the scene of the

homicide. He alleged that had his counsel investigated the shell casings, the evidence "could have pointed prosecution in the direction of another possible suspect." In addition, he also alleged that the evidence "could have developed exculpatory evidence" in his favor or could have developed "inculpatory evidence" for a "different principal besides [Benson]."

Next, he alleged that his counsel was ineffective for failing to move to suppress a search warrant for his vehicle. He alleged that the search warrant was executed and returned 21 days after it was issued. Benson asserted that because the search warrant was returned 21 days after the warrant was issued, it was in violation of Neb. Rev. Stat. § 29-815 (Reissue 2016) which requires a search warrant to be returned within 10 days. Benson argued that had his counsel objected to the delayed procedure, that the evidence obtained by this search warrant would not have been admissible at trial.

Benson also alleged that the State committed prosecutorial misconduct in that the State failed to disclose the details of any agreement that the State made with Stockdale, which induced him to testify against Benson. Benson alleged that Stockdale received a reduction in his sentences so that he would testify against Benson. Benson argued that the State committed prosecutorial misconduct by failing to disclose the agreement it had made with Stockdale. Finally, Benson asserted that there was insufficient evidence to support his convictions.

On July 8, 2021, the district court denied Benson's verified motion for postconviction relief without an evidentiary hearing. The district court found that Benson's claim that his trial counsel was ineffective for failing to test the shell casings was too conclusory because he did not allege what the investigation would have uncovered. The district court found that Benson failed to allege how he was prejudiced by the State not returning the warrant within the 10 days as required by § 29-815. The district court found that Benson's prosecutorial misconduct claim was procedurally barred because it was an issue which could have been litigated on direct appeal. The district court also found that Benson's claim of insufficient evidence was also procedurally barred because the issue was raised and rejected by the Supreme Court.

Benson now appeals to this court.

ASSIGNMENTS OF ERROR

On appeal, Benson generally assigns that the district court erred in overruling his motion for postconviction relief without an evidentiary hearing. Reordered and restated, Benson alleges that the district court erred by not granting him an evidentiary hearing with respect to his claim that trial counsel was ineffective for failing to have shell casings found in his vehicle and at the crime scene tested forensically, for finding that his claim of prosecutorial misconduct should have been raised on direct appeal rather than being considered evidence of ineffective assistance of appellate counsel, and for finding in the alternative that even if not barred, his claims of prosecutorial misconduct fail due to a failure of Benson to set forth facts and applicable law. Finally, Benson assigns that the district court erred by ruling that his rights under the Fourth and Fifth Amendments were not violated.

An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). Benson did not make any claim in his postconviction motion regarding a violation of his Fourth and Fifth Amendment rights. Nor did he

- 4 -

allege that his trial counsel was ineffective for failing to raise the issue of prosecutorial misconduct at the trial level. He did claim that prosecutorial misconduct occurred, but he does not allege any deficiencies in the performance of trial counsel with respect to the alleged misconduct. Accordingly, we do not consider these assignments of error.

Benson also argues but does not assign that there was insufficient evidence to support his conviction. And he argues but does not assign that the trial court erred when it overruled his motion to sever the witness tampering charges from the other three charges at trial. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). Even if these two issues were properly assigned and argued, they would be procedurally barred as both were addressed by the Supreme Court on direct appeal. Accordingly, we do not consider these arguments.

Finally, Benson argues but does not assign as error that trial counsel was ineffective for failing to file a motion to suppress the search of his pickup based on the failure of the officers conducting the search to file a return of the search warrant within the statutorily prescribed ten day period. Even if considered, absent a demonstration of prejudice, failure to return a search warrant within the statutory 10 day period does not invalidate a search conducted pursuant to an otherwise valid warrant. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). Our record is devoid of any showing of how Benson was prejudiced by the late return of the warrant.

Therefore, the only assignment of error that is properly before us is Benson's allegation that his trial counsel was ineffective for failing to test the shell casings that were found in and near his vehicle.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018). On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing; instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

## ANALYSIS

The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id*. In a proceeding under the Nebraska Postconviction Act, the application is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law is not sufficient to require the court to grant an evidentiary hearing. *State v. Henderson, supra.* An evidentiary hearing must be granted where the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied. *Id*.

Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, where, as here, the defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015). In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Armendariz, supra.* Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Henderson, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

Now, we turn to the specific allegation that Benson both assigns and argues with respect to his trial counsel being ineffective.

In both his verified motion for postconviction relief and his brief on appeal, Benson alleges that he received ineffective assistance of trial counsel because trial counsel failed to seek forensic analysis of the shell casings that were found in Benson's vehicle and on the street where the homicide took place.

Trial counsel's failure to investigate various aspects of the case is not ineffective assistance of counsel, absent prejudice and a specific showing what the investigation would have revealed, what exculpatory evidence would have been discovered, or how such an investigation would have changed the outcome of the trial. *State v. Stricklin*, 310 Neb. 478, 967 N.W.2d 130 (2021). A petitioner's postconviction claims that his or her defense counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence the investigation would have procured and how it would have affected the outcome of the case. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

There is nothing in the trial record, Benson's verified motion for postconviction relief, or his brief on appeal that establishes a reasonable probability that the outcome of the trial would have been different if his trial counsel had sought to have the spent casings examined for fingerprints or DNA. The State's witnesses, which included firearms experts, explicitly testified that it is difficult to extract fingerprints or DNA from spent casings due to the heat, friction, and gases eradicating the fingerprints and DNA from the casings. Benson provided no allegation or citation to any scientific literature that questioned this testimony. Benson does not assert what exculpatory evidence would have been found had his trial counsel had the casings tested. Rather, Benson asserts only the possibility that the tests may produce evidence that would connect another person to the casings. To the extent that Benson on appeal argues that no tests were done to determine what type of gun was used to commit the alleged crime, we note that no allegation of this deficiency was made in his postconviction motion. Therefore, we do not consider it here. In his postconviction motion and in his brief, Benson only speculates about the possibility of what

the DNA tests or fingerprint analysis would show. These vague and conclusory statements are not definitive enough to warrant an evidentiary hearing.

Two other factors further support the district court's findings. At trial, Smith noted that the sole scenario in which she would ask for DNA testing would be if there was reason to believe someone had touched the casing after firing. Given the risks, trial counsel could rightly conclude that DNA testing could result in further evidence connecting Benson to the crime. Here, trial counsel, in cross-examination sought to create doubt by virtue of the State's failure to conduct the additional testing. Benson now second guesses that strategy without any support for demonstrating how the testing would help his case. Further given the totality of the State's evidence, including but not limited to Benson's own inculpatory statements, even the discovery of someone else's DNA on the casings would not have negated the volume of evidence adduced as to the identity of the shooter. Accordingly, since Benson did not allege facts which, if proved, would establish a reasonable probability that the outcome of his case would have been different, this assignment of error fails.

CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in denying Benson an evidentiary hearing on his motion for postconviction relief.

AFFIRMED.