IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. FREDRICKSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RICHARD A. FREDRICKSON, APPELLANT.

Filed May 26, 2020.     No. A-19-633.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

David V. Drew, of Drew Law Firm, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Richard A. Fredrickson pled no contest to one count of robbery. The Washington County District Court sentenced him to 20 to 38 years' imprisonment. Fredrickson claims that the district court imposed an excessive sentence and that he was denied his right to effective assistance of counsel. We affirm.

## II. BACKGROUND

On August 3, 2018, the State filed an information charging Fredrickson with three counts: count I, use of a deadly weapon (firearm) to commit a felony, a Class IC felony, pursuant to Neb. Rev. Stat. § 28-1205 (Reissue 2016); count II, possession of a deadly weapon (firearm) by a felon or a fugitive from justice, a Class ID felony, pursuant to Neb. Rev. Stat. § 28-1206 (Supp. 2017); and count III, robbery, a Class II felony, pursuant to Neb. Rev. Stat. § 28-324 (Reissue 2016). The

- 1 -

State also alleged that Fredrickson was a habitual offender pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016).

On March 12, 2019, the State filed an amended information charging Fredrickson with three counts: count I, possession of a deadly weapon (firearm) by a felon or a fugitive from justice, a Class ID felony, pursuant to § 28-1206; count II, robbery, a Class II felony, pursuant to § 28-324; and count III, use of a deadly weapon (other than a firearm) to commit a felony, a Class II felony, pursuant to § 28-1205. The amended information did not include a habitual criminal allegation.

At a hearing on April 5, 2019, pursuant to a plea agreement, Fredrickson pled no contest to the robbery charge in the amended information. In exchange for the plea, the State dismissed the other two counts in the amended information and it recommended a sentence of 20 to 25 years' imprisonment for the robbery, with no restitution requested. According to the factual basis provided by the State,

> On April 11th, 2018, at approximately 2 p.m., [Fredrickson] and the codefendant entered a gas station in Fort Calhoun [in Washington County, Nebraska]. The codefendant was armed with a firearm, to wit: A pellet gun. Through force or fear or violence [Fredrickson] and the codefendant then took approximately $200 from the gas station and left the store.

The district court accepted Fredrickson's no contest plea to the robbery and found him guilty of the same. The case was set for sentencing.

After a hearing on June 4, 2019, the district court sentenced Fredrickson to 20 to 38 years' imprisonment, with credit for 419 days already served.

Fredrickson appeals.

## III. ASSIGNMENTS OF ERROR

Fredrickson assigns (1) the district court imposed an excessive sentence and (2) he was denied his right to effective assistance of trial counsel because his trial counsel failed to make inquiries and assert objections related to search warrants, did not conduct basic and necessary discovery, failed to adequately pursue plea negotiations, failed to seek a continuance when Fredrickson had not participated in the presentence investigation process, and failed to research or assert Fredrickson's alibi defense.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Fredrickson was convicted of robbery, a Class II felony, pursuant to § 28-324. The Class II felony was punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). Fredrickson was sentenced to 20 to 38 years' imprisonment; his sentence was within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Fredrickson was 30 years old at the time of sentencing. According to the presentence investigation report (PSR), he did not participate in the presentence investigation interview. Therefore, the PSR was completed without Fredrickson's input, and no assessments were completed. The PSR reveals that Fredrickson was single, had completed some college, and was not in the labor force.

Fredrickson's criminal history includes convictions for theft by unlawful taking in 2006 and 2007 (fines); driving under the influence (DUI) in 2007 (6 months' probation and a fine); damage to property in 2008 (fine); "Minor Possess/Sell/Dispense/Consume Alcohol" in 2008 (1 day in jail); five counts of robbery in 2008 (3 to 4 years' imprisonment each, consecutive); and "DUI-Second Offense" in 2016 (10 days in jail, a fine, 10 days' house arrest, and 18 months' probation). As for his current conviction, Fredrickson and another man robbed a gas station while there were four people inside. The PSR states, "Probation system records indicate that [Fredrickson] is currently on active probation out of Lancaster County, and that there is an active administrative warrant for [Fredrickson] because of this." Victim impact statements were included in the PSR.

At the sentencing hearing, the State recommended a sentence of 20 to 25 years' imprisonment, and Fredrickson's counsel joined in that recommendation. No further argument was made by counsel on either side, and Fredrickson did not personally address the court.

The district court stated that it had considered the relevant sentencing factors. The court noted that Fredrickson "terrorized the employees in the store and they're still haunted by [his] actions." It was also noted that Fredrickson was on probation at the time he robbed the gas station. The court specifically stated that it was following the "low end" of the recommended sentence, but that it was "increasing the maximum jam date, release date" because it wanted Fredrickson "on parole supervision for a longer period of time than the 25 years," "especially given [Fredrickson's] previous criminal record." The court sentenced Fredrickson to 20 to 38 years' imprisonment.

In his brief, Fredrickson contends that his sentence was an abuse of discretion because he and his codefendant "received fairly similar sentences, with [Fredrickson] receiving 20 to 38 years[' imprisonment] and [his codefendant] being sentenced to 22 . . . to 35 years[']

imprisonment, although [his codefendant's] sentence was as a habitual offender." Brief for appellant at 18. However, the mere fact that a defendant's sentence differs from that imposed on a coperpetrator does not in and of itself make the defendant's sentence an abuse of discretion, as the court must consider each defendant's life, character, and previous conduct in imposing sentence. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004). In this case, Fredrickson's criminal record, and the fact that he committed the current robbery while on probation, certainly factored into the sentence he was given.

Having considered the relevant factors in this case, we find that Fredrickson's sentence was not excessive or an abuse of discretion and his sentence is therefore affirmed. See *State v. Lierman, supra* (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

2. EFFECTIVENESS OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha, supra*. Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id*.

Fredrickson has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id*.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Thus, in reviewing Fredrickson's claims of ineffective assistance of counsel on direct appeal, we decide only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. See *id*.

Fredrickson claims that his trial counsel did not conduct basic and necessary discovery, including matters related to search warrants and plea negotiations; failed to seek a continuance when Fredrickson had not participated in the PSR process; and failed to research or assert Fredrickson's alibi defense.

*(i) Search Warrant and Motion to Suppress*

Fredrickson specifically assigned that his trial counsel "failed to inquire whether Law Enforcement followed the procedures for the execution and return of the search warrant of [his] residence and vehicle, and therefore failed to object to the admission of the search warrant affidavits, search warrant and return at the suppression hearing held March 25, 2019." Brief for appellant at 4.

The original information was filed on August 3, 2018. Fredrickson's trial counsel subsequently filed a motion to suppress "all evidence obtained from a search of [Fredrickson's] residence and vehicle on or about April 11." In that motion, counsel claimed that the affidavits upon which the search warrants were issued contained false information.

A hearing on the motion to suppress was held on March 25, 2019. At that hearing, the State offered into evidence exhibits containing the affidavits and applications for the issuance of search warrants for Fredrickson's residence and vehicle, the search warrants for the residence and vehicle, and the returns and inventories from each search. Also received into evidence were exhibits containing a probation order and parole certificates and revocations indicating that Fredrickson was subject to search and seizure of his premises, person, or vehicle at the time of the searches of his residence and vehicle in this case. Fredrickson's counsel specifically stated he had no objections to the exhibits.

Next, law enforcement officers testified about the warrant process in this case. During that testimony, it came out through the State's questioning that the original signed warrants for the residence and vehicle searches could not be located by court staff; the warrants had apparently been faxed or emailed to law enforcement by the issuing judge. The law enforcement officer testified that he showed the State's exhibits (copies of the affidavits and applications, warrants, and returns and inventories) to the issuing judge, who then informed the officer that he had signed the warrants and the returns and confirmed his signature on the copies to the officer.

After the State rested, the following colloquy was had on the record:

[Fredrickson's trial counsel]: Just in full disclosure, I didn't realize that the originals were lost.

THE COURT: I didn't either until five minutes ago.

[Trial Counsel]: Yeah, I wasn't prepared to argue any of this and I'm kind of surprised. I would like to know more about that, too. I don't doubt [the issuing judge], of course, but I, just procedurally, I think it's my duty to make sure that I look into this issue to see if it's something or not.

After Fredrickson's counsel presented evidence, counsel again addressed the court regarding the original search warrants, stating, "[I]t's something I would appreciate maybe just a little bit of time to research and address, I don't know if that's an issue or not, but I would really like to look into it as I've taken an oath to zealously represent him." The court responded by saying, "Sure." The State went on the record to address the statutory requirements regarding procedure, and stated, "I would tell you for the purposes of the State's case that we verified the authenticity of the warrant

and that it would be at least our position at this time if there is any abnormality with procedure, that would be entirely on the fault of the . . . County clerk's office."

On March 30, 2019, Fredrickson's trial counsel filed a second motion to suppress the evidence obtained from a search of Fredrickson's residence and vehicle. In his motion, counsel alleged specific statutory violations in the warrant process, specifically that "no relevant search warrants, affidavits, and inventories are on file" as required by Neb. Rev. Stat. §§ 29-815 and 29-816 (Reissue 2016). Counsel then argued, "[t]he statutory failure to preserve the affidavits, search warrants and inventories must, as a violation in itself, result in suppression." Counsel further argued that "because the warrants were not preserved by statute, the authenticity and contents cannot survive this legal challenge to the four corners of the documents." "Because the State is unable to provide certified copies of the original affidavits, the original search warrants, and the original inventories, the State cannot meet its burden to show that a legal search occurred of the residence and the vehicle."

At a hearing on April 5, 2019, the district court took up Fredrickson's second motion to suppress. Counsel on both sides made arguments, and the State said it "would stipulate for the purposes of this hearing that the original signed warrant for the car and for the house could not be located." After a short recess, trial counsel informed the court that the State extended a plea deal to Fredrickson "until the 9th." After some back and forth on scheduling, and what the court could consider when ruling on the second motion to suppress, the court said it would get a ruling out on the second motion to suppress as quickly as possible. The court then took up a motion to compel, a motion in limine, and a motion to admit hearsay. Next, Fredrickson was arraigned on the amended information and he pled not guilty to all charged offenses. Trial having previously been set, the court discussed the jury selection process with both counsel. After a short recess, Fredrickson ultimately accepted the State's plea deal and pled no contest to robbery, and his plea was accepted by the district court.

In his appellate brief, Fredrickson contends that the original affidavits, search warrants, and inventories were not preserved, and neither the originals nor copies were filed with the district court. He claims "these documents were received by the Court at the suppression hearing without objection because [trial] counsel made no inquiry as to whether the original documents were preserved." Brief for appellant at 22. And "[h]ad [trial] counsel made inquiry as to the originals, he would have been in [a] position to make a valid foundational objection at the suppression hearing." *Id*.

However, the record clearly shows that trial counsel did attempt to suppress the evidence seized on the basis that the original documents were lost. As noted above, while counsel did not initially object to the exhibits containing the search warrant at the first suppression hearing, once counsel discovered that the original documents had not been located, he asked for time to research the issue. He then filed a second motion to suppress alleging specific statutory violations in the warrant process, and that "no relevant search warrants, affidavits, and inventories are on file" as required. He argued his motion at the second suppression hearing on April 5, 2019. Accordingly, Fredrickson has failed to show deficient performance.

Moreover, regardless of the adequacy of trial counsel's performance, Fredrickson cannot show prejudice. His second motion to suppress the evidence based on statutory violations had not been ruled on when Fredrickson ultimately entered his plea at that same hearing. During his plea,

Fredrickson affirmed his understanding that a plea of no contest would waive any technical defects that may exist in the record, as well as any motions and defenses that he had to the charge. The district court also informed Fredrickson that

> if any evidence was seized from you you're entitled to a separate hearing to determine if that evidence was lawfully seized. And I had motions to suppress, I just ruled on one the other day and I had another one that I was going to rule on, that's what we're talking about, but by entering a plea of no contest you're waiving and giving up your right to those hearings or to appeal any ruling that I make on those hearings. Do you understand that?

Fredrickson responded, "Yes."

Accordingly, because Fredrickson cannot prove deficiency or prejudice, this claim of ineffectiveness fails.

### (ii) Identification Evidence

Fredrickson specifically assigned that his trial counsel "failed to conduct sufficient discovery prior to plea negotiations or requesting to continue the trial to give him the opportunity to review the evidence," and therefore his plea was not made knowingly, voluntarily, and intelligently. Brief for appellant at 4. He then specifically lists several items of discovery requested by him on April 3, 2019, to wit: all cruiser and body cameras in the traffic stop, arrest of Fredrickson and the codefendant, the search of the residence, and while transporting Fredrickson; all photos taken during the search of the residence; log of all officers who searched the house; photos of clothes the police think he wore, including shoes; video of the testing of the pellet gun allegedly used in the robbery; photos of the subject vehicle; a complete list of all photos taken in the case; and the name and contact information of the neighbor who filmed the back side of Fredrickson's residence.

In his motion to compel filed on April 3, 2019, Fredrickson did ask the district court to compel the State to produce the discovery items set forth above. At the hearing on April 5, the motion to compel was taken up by the court. The State informed the court that some of the cruiser and body camera footage "does not exist, due to some technical error or human error" or that it could not be located by the specific law enforcement agency, but that the State had turned over all camera footage in its office that it was aware of. It was agreed that Fredrickson would subpoena the video evidence from the law enforcement agencies, and that the State would cooperate in making requests for the same to the agencies. The State also informed the court that it had already turned over all photos taken during the search of the residence. As for the log of all officers who searched the house, the State said it "turned over every written report" in its possession. The State confirmed it had provided Fredrickson with all the photos of the clothes seized. At the hearing, Fredrickson's trial counsel withdrew his request for the video made of the testing of the pellet gun, stating he had photos; but the court still ordered the State to provide any video or photos of the pellet gun ballistics test it had in its possession. Trial counsel informed the court that it received the photos of the subject vehicle that day. As for the name and contact information of the neighbor who filmed the back side of Fredrickson's residence, the State said that should have already been provided to Fredrickson's trial counsel, and trial counsel responded, "I've got it. If they say I've got it, then I've got it." Throughout the hearing, the district court told the State to provide any of

the above evidence that it had in its possession to Fredrickson if it had not done so already. However, later at that same hearing, Fredrickson ultimately agreed to plead no contest to the robbery in exchange for the State dismissing the two other charges.

In his appellate brief, Fredrickson argues that "this is a case where identification was the primary issue," and because none of the witnesses at the gas station were able to identify the individuals who committed the robbery, "the State was relying on evidence as to the identity of the defendants, including the identity of the vehicle driven by the robbers, the individuals located at the residence where the vehicle was found, and the items found in the residence, including the pellet gun, black bandanas and black clothes." Brief for appellant at 22-23. He claims that his trial counsel did not receive much of the evidence at all (i.e., the cruiser and body camera videos, which may not have even been preserved by law enforcement), and that much of the evidence he did receive was received on April 5, 2019. He then argues, "Based on the time stamps in the bill of exceptions, [trial counsel] would have had 38 minutes to review the evidence he did receive and discuss it with [Fredrickson], and to discuss what evidence was not preserved giving rise to a spoliation argument"; and "38 minutes is most likely inadequate to meaningfully evaluate [Fredrickson's] defense. *Id*. at 23-24. Fredrickson claims that he "urged his trial counsel to obtain the discovery to evaluate his case but was told that the plea offer would be withdrawn if the State was required to provide this discovery." *Id*. at 24. Fredrickson believes the discovery would have provided him valid defenses to the charges against him, "but was told that he needed to accept the plea because the plea offer would be revoked and he was advised that he would be convicted no matter what the evidence showed." *Id*. He contends that an evidentiary hearing is necessary to determine what discovery was received, reviewed, and discussed in a meaningful manner with him prior to him entering his no contest plea and whether his plea was the result of coercion by trial counsel. He also contends that the record is not sufficient to determine whether he and trial counsel discussed the option of continuing the trial to give counsel the ability to receive and review discovery.

The record reflects that after a 38-minute recess at the hearing on April 5, 2019, the district court was informed that Fredrickson wanted to change his not guilty pleas to the three counts charged in the amended information, and that he would be pleading no contest to the robbery in exchange for the other two counts being dismissed. Before accepting Fredrickson's no contest plea to the robbery, the court questioned Fredrickson about his understanding of his rights. Fredrickson confirmed that he understood the plea meant he was waiving his presumption of innocence, his right to a trial, his right to confront witnesses and to present evidence in his defense, and any motions and defenses he had to the charge. He denied that anyone made any threat, direct or indirect, used any force, or held out any inducement or promise to get him to waive his rights. Fredrickson confirmed that he discussed all facts as he believed them to be and any defenses to the robbery with his attorney. The court then asked Fredrickson, "[A]fter considering all the facts and circumstances of the crime, considering the other charges that are being dismissed, the risks associated with the trial and any defenses that you may have, do you feel this plea agreement is in your best interests, sir?" Fredrickson responded, "No." The court then said it would see Fredrickson on April 15 (the date previously set for jury trial). However, after a 12-minute recess, the court was informed that Fredrickson wanted to proceed with the plea. The following colloquy took place on the record:

THE COURT: . . . Now, Mr. Fredrickson, I'm coming back to you and, again, after considering the original charges against you and any defenses that you may have and the risks associated with trial and all those things, I'm going to ask you again, you previously entered a no contest plea, do you feel that that plea agreement is in your best interests?

. . . FREDRICKSON: Yes.

THE COURT: Okay. And you've had enough time to discuss this case with [trial counsel], is that right?

. . . FREDRICKSON: Yes.

THE COURT: All right. Has anyone connected with law enforcement, or anyone else, made any threat, direct or indirect, or used any force or held out any inducement or promise, other than the plea agreement we've been talking about, to get you to plead no contest to the robbery charge?

. . . FREDRICKSON: No.

Fredrickson again confirmed that he still wished to plead no contest to the robbery, and the court accepted his plea.

Fredrickson's claim that he was coerced by trial counsel into accepting the plea is contradicted by the record. Fredrickson specifically denied that anyone made any threat, or used any force or held out any inducement or promise, other than the plea agreement, to get him to plead no contest to the robbery. However, we find that the record before us is insufficient to address whether the discovery was received, reviewed, and discussed in a meaningful manner with Fredrickson prior to him entering his no contest plea and whether he and trial counsel discussed the option of continuing the trial to give counsel the ability to receive and review discovery.

### (iii) Plea Agreement

Fredrickson claims that his trial counsel's failure to obtain and review the discovery discussed above hampered counsel's ability to negotiate a better plea deal. He further claims that trial counsel told him that the plea offer would be withdrawn if the State was required to provide the discovery. As noted above, any claim that Fredrickson was coerced by trial counsel into accepting the plea is contradicted by the record. However, the record before us is insufficient to determine whether the discovery was obtained, reviewed, and discussed in a meaningful manner with Fredrickson in an attempt to negotiate a better plea deal.

### (b) Continuance for PSR

According to the PSR, trial counsel informed the probation officer that Fredrickson did not want to complete the presentence investigation interview. Fredrickson claims that his trial counsel should have advised him to seek a continuance of the sentencing and then explained to him the importance of completing the interview; and then Fredrickson could have met with the probation officer and provided mitigating information for the district court to consider. Fredrickson failed to set forth in his brief what mitigating information he would have presented to the district court or the probation officer had a continuance been sought. Furthermore, Fredrickson was given the opportunity to directly address the district court at sentencing, at which time he could have provided mitigating information, but he chose not to address the court. Accordingly, Fredrickson

has not shown deficient performance and he cannot show prejudice. This claim of ineffective assistance of counsel fails.

### (c) Alibi Defense

Fredrickson claims that his trial counsel was ineffective for failing to research or assert Fredrickson's alibi defense. Fredrickson asserts that he made several requests of his trial counsel to "gather information including surveillance videos of locations in Omaha where he was on the date of the robbery" which information would corroborate an alibi defense. Brief for appellant at 27.

The State argues that Fredrickson has not made sufficiently specific allegations of deficient conduct because he "provides this Court with no information regarding the location of the videos, or what other specific information or locations trial counsel should have investigated in order to prove his alibi defense." Brief for appellee at 12. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (defendant alleged attorney should have called as character witnesses individuals he worked with and friends and relatives who had seen him with victim prior to allegations; defendant's descriptions were too broad and indefinite to raise and preserve his allegations of deficient conduct). See, also, *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019) (appellate counsel must give on direct appeal names or descriptions of uncalled witnesses forming basis of claim or ineffective assistance, otherwise, potential postconviction court would be unable to identify whether claim based on alleged failure to call particular witness was preserved on direct appeal; claims concerning "adverse witnesses" not preserved).

Although Fredrickson's initial brief did lack specificity as to the source of the surveillance videos that would corroborate an alibi defense, he attempted to rectify the lack of specificity in his reply brief. However, his attempt to rectify the lack of specificity in his argument came too late. See, *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018) (purpose of appellant's reply brief is to respond to arguments appellee advanced against errors assigned in appellant's initial brief; assignment of error raised for first time in reply brief is untimely and will not be considered by court; analysis limited to assignments made and argued in appellant's original brief); *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018) (appellant's new argument encompassed in assignment of error, but attempt to raise it for first time in reply brief is untimely, because it gave appellees no opportunity to respond). Because Fredrickson failed to properly argue this issue in his initial brief, we cannot get to the merits of his claim on direct appeal and he has not preserved this issue.

### VI. CONCLUSION

For the reasons stated above, we affirm Fredrickson's sentence. Additionally, we find that the record before us is not sufficient to address on direct appeal Fredrickson's ineffective assistance of counsel claims with respect to whether (1) discovery was received, reviewed, and discussed in a meaningful manner with Fredrickson prior to him entering his no contest plea and whether he and trial counsel discussed the option of continuing the trial to give counsel the ability to receive and review discovery; and (2) trial counsel's failure to obtain and review the discovery hampered

counsel's ability to negotiate a better plea deal. The remainder of Fredrickson's ineffective assistance of counsel claims either fail or were not properly argued and preserved.

AFFIRMED.